IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC MILLER, | Case No. 1:12-cv-00137-LJO-DLB |
| Plaintiff, | ORDER ON DEFENDANTS' MOTION TO STRIKE AND MOTION TO DISMISS |
| vs. | (Docs. 13 & 14) |
| STEVEN JOHN SCHMITZ, et al., | |
| Defendants. | |
| _____/ | |

Plaintiff Isaac Miller ("Plaintiff") filed this action against Defendants Steve Schmitz ("Officer Schmitz"), the City of Hanford ("the City"), and Ronald Silva ("Mr. Silva") for allegedly arresting and initiating criminal charges against Plaintiff without probable cause.  Now pending before the Court are two motions filed by Officer Schmitz and the City ("Defendants"): (1) a motion to strike pursuant to California's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute, Cal. Code Civ. Proc. § 425.16(b); and (2) a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff has opposed both motions, and Defendants have replied.  Upon careful consideration of the parties' submissions and the record in this case, the Court DENIES the motion to strike and GRANTS IN PART and DENIES IN PART the motion to dismiss.

## I.      BACKGROUND

### A.      Plaintiff's Allegations

On February 17, 2010, Officer Schmitz was called to Hanford Community/Adventist Medical Center in Hanford, California to investigate a reported altercation.  Mr. Silva had been admitted to the hospital for treatment of a broken thumb, a laceration above his eye, and other abrasion-type injuries.  Mr. Silva was visibly intoxicated: his eyes were red, his breath had a strong smell of alcohol that was

1   detectable from three feet away, and his speech was slurred.  Nevertheless, Mr. Silva maintained that

2   he had been assaulted by two unknown men near the Applebee's restaurant located at 1665 West Lacy

3   Boulevard in Hanford, California.

4       Over the next few days, Mr. Silva's version of the events changed.  On February 19, 2010, Mr.

5   Silva contacted the police and reported that the assault actually occurred around the Chili's restaurant

6   located at 119 North 12th Avenue in Hanford, California.  In addition, Mr. Silva reported that one of his

7   attackers was a man named Jacob Miller who lived near Elgin Avenue and California Highway 41.

8   According to Mr. Silva, he did not initially reveal the identity of Jacob Miller at the hospital out of fear

9   of potential retaliation.

10      On February 23, 2010, Officer Schmitz met again with Mr. Silva.  This time Mr. Silva recalled

11   the following events.  On the night of his assault, he and two other men, Jacob Miller and a Ron from

12   Riverdale, were kicked out of Chili's for arguing amongst each other.  Mr. Silva tried to shake hands

13   with Jacob Miller in the parking lot, but he was hit and briefly knocked-out from behind by Ron.  The

14   two men walked away as Mr. Silva regained consciousness.

15      Officer Schmitz presented Mr. Silva a photo lineup.  Officer Schmitz indicated that the lineup

16   contained the only person matching the name and description Mr. Silva provided.  However, this was

17   not true: the lineup did not include a picture of Jacob Miller.  Instead, it included a picture of Plaintiff,

18   Jacob Miller's brother, who shares similar physical features with Jacob Miller.  Mr. Silva subsequently

19   identified Plaintiff as one of the men who assaulted him.

20       Without investigating the matter any further, Officer Schmitz drafted a police report, one that

21   omitted several notable facts.  First, Officer Schmitz failed to mention that there were no 9-1-1 calls or

22   dispatch reports regarding violent activity around an Applebee's or Chili's restaurant on February 17,

23   2010.  Second, Officer Schmitz failed to note that Mr. Silva was visibly intoxicated that night.  Third,

24   Officer Schmitz failed to indicate that he affirmatively represented to Mr. Silva that the photo lineup

25   included a picture of Jacob Miller.

26      Based on Officer Schmitz's report, a criminal complaint was filed against Plaintiff on January

27   14, 2011, and on February 6, 2011, Plaintiff was arrested pursuant to an arrest warrant.  At Plaintiff's

28   preliminary hearing on June 8, 2011, Officer Schmitz made false statements that tended to artificially

buttress a finding of probable cause to arrest Plaintiff.  First, Officer Schmitz maintained that he could not find a Department of Motor Vehicles ("DMV") picture of anyone named Jacob Miller living near Elgin and California Highway 41, yet Jacob Miller was a licensed driver at the time and was registered at an address nearby.  Second, Officer Schmitz maintained that Mr. Silva stated that he suffered some swelling in his left eye due to the altercation on February 17, 2010, when in fact, Mr. Silva never made such statements.

Almost one year later, on the eve of trial, Plaintiff's charges were dismissed.  The prosecutor assigned to the case indicated that there were exculpatory witness statements showing that Mr. Silva's injuries were actually the result of his falling while intoxicated as opposed to any physical altercation with Plaintiff.

**B.     Procedural History**

Plaintiff filed suit on January 29, 2012.  Plaintiff asserts the following claims: (1) false arrest and malicious prosecution against Officer Schmitz under 42 U.S.C. § 1983; (2) declaratory relief and expungement of Plaintiff's arrest record pursuant to 28 U.S.C. § 2201; and (3) malicious prosecution against Mr. Silva under California tort law.  In terms of damages, Plaintiff seeks, among other things, attorney's fees from Officer Schwarz in his official capacity and punitive damages from both Officer Schwartz and Mr. Silva.

On March 29, 2012, Defendants filed the now pending motion to strike and motion to dismiss.  Defendants seek dismissal of: (1) Plaintiff's claim for false arrest and malicious prosecution against Officer Schmitz; (2) Plaintiff's claim for the expungement of his arrest record; (3) Plaintiff's claim for attorney's fees against Officer Schmitz in his official capacity; and (4) Plaintiff's request for punitive damages.  Plaintiff filed oppositions to the motions on April 4, 2012, and Defendants filed replies on April 19, 2012.  The Court deemed this matter suitable for decision without oral argument pursuant to Local Rule 230(g).

**II.    LEGAL STANDARDS**

**A.     Anti-SLAPP Motion to Strike**

California's anti-SLAPP statute provides, in relevant part:

A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the

3

1
2

California Constitution in connection with a public issue shall be subject to a special
motion to strike, unless the court determines that the plaintiff has established that there
is a probability that the plaintiff will prevail on the claim.

3   Cal. Code Civ. Proc. § 425.16(b)(1).

4        Thus, a court evaluating a motion to strike under the anti-SLAPP statute must engage in a two-

5   part inquiry.  Equilon Enters. v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002).  First, the court must

6   determine whether the defendant has made a threshold showing that the challenged cause of action is

7   one that arises from an act in furtherance of the defendant's right of petition or free speech.  Id.  "If the

8   court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated

9   a probability of prevailing on the claim."  City of Cotati v. Cashman, 29 Cal. 4th 69, 76 (2002).  The

10  plaintiff must show that the claim is "both legally sufficient and supported by a sufficient prima facie

11  showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."

12  Jarrow Formulas, Inc. v. LaMarche, 31 Cal. 4th 728, 477 (2003).  The plaintiff's burden is akin to the

13  one he would face in fending off a motion for summary judgment or directed verdict.  Gilbert v. Sykes,

14  147 Cal. App. 4th 13, 26 (Ct. App. 2007).

15       If the court concludes that the cause of action arises from protected speech and lacks merit, it is

16  subject to being stricken from the complaint under the anti-SLAPP statute.  Oasis West Realty, LLC v.

17  Goldman, 51 Cal. 4th 811, 820 (2011).  The prevailing defendant is also entitled to recover attorney's

18  fees and costs.  Cal. Code Civ. Proc. § 425.16(c).

19       **B.      Motion to Dismiss**

20       A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the

21  legal sufficiency of a claim presented in the complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir.

22  2001).  Where there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged

23  under a cognizable legal theory," dismissal under Rule 12(b)(6) is proper.  Balistreri v. Pacifica Police

24  Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

25       To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to

26  state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

27  (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

28  to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v.

4

1  Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  While "[t]he plausibility standard is not akin

2  to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted

3  unlawfully." Id. (quoting Twombly, 550 U.S. at 556).  Naked assertions, "labels and conclusions," or

4  "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

5  See also Iqbal, 129 S. Ct. at 1949.

6        In deciding a motion to dismiss under Rule 12(b)(6), the court accepts the factual allegations of

7  the complaint as true and construes the pleadings in the light most favorable to the party opposing the

8  motion. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  However, the court may

9  disregard allegations that are contradicted by matters properly subject to judicial notice or by exhibit.

10  Id.  The court may also disregard allegations that are "conclusory" or are the product of unreasonable

11  deductions and inferences.  Id.  Finally, if the court concludes that dismissal under Rule 12(b)(6) is

12  warranted, the court should not dismiss the complaint "unless it determines that the pleading could not

13  possibly be cured by the allegation of other facts." Cook, Perkiss & Liehe, Inc. v. Northern California

14  Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990).

15  **III.    DISCUSSION**

16        The resolution of Defendants' motion to strike depends to some extent on the Court's ruling on

17  Defendants' motion to dismiss.  The Court therefore turns to the motion to dismiss first.

18        **A.    Motion to Dismiss**

19            **1.    Construction of Plaintiff's Claim(s)**

20        As an initial matter, there appears to be some confusion as to whether Plaintiff's allegations of

21  false arrest and malicious prosecution constitute a single claim or two separate claims against Officer

22  Schmitz under § 1983.  In his complaint, Plaintiff appears to incorporate his allegations pertaining to

23  false arrest and malicious prosecution in a single cause of action against Officer Schmitz.  However, in

24  moving to dismiss, Defendants address Plaintiff's allegations of false arrest and malicious prosecution

25  separately as though the two constitute separate claims.  Similarly, in his opposition, Plaintiff refers to

26  the two as separate claims.

27        The Court construes Plaintiff's allegations as asserting a single claim of malicious prosecution

28  under § 1983.  Plaintiff alleges that he was placed under arrest only after a criminal complaint and a

warrant were issued for his arrest.  In other words, Plaintiff alleges that his arrest was the result of legal

process.  Under such circumstances, there can be no claim for false arrest; false arrest consists of an

arrest made *in the absence of* legal process.  Wallace v. Kato, 549 U.S. 384, 389 (2007); Blaxland v.

Commonwealth Dir. of Pub. Prosecutions, 323 F.3d 1198, 1204-06 (9th Cir. 2003).  Where, as here, the

arrest is made after legal process has been initiated, any challenge to the arrest is subsumed by a claim

for malicious prosecution.  As the Supreme Court explained:

> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process–when, for example, he is bound over by a magistrate or arraigned on charges.  Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process.  If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.  From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself.

Wallace, 549 U.S. at 389-90 (internal quotation marks and citations omitted).  Accord Beck v. City of

Upland, 527 F.3d 853, 861 n.7 (9th Cir. 2008) (noting that the claim for "false arrest" was actually a

claim for malicious prosecution because the plaintiff was arrested only after the prosecutor had filed a

criminal complaint against the plaintiff); Wilkins v. DeReyes, 528 F.3d 790, 798-99 (10th Cir. 2008)

(construing the plaintiff's challenge to detention pursuant to an arrest warrant as a claim for malicious

prosecution and not false arrest).[1]

## 2.    Malicious Prosecution

In the Ninth Circuit, the general rule is that a claim for malicious prosecution is not cognizable

under § 1983 where, as in California, process is available within the state judicial system to provide a

remedy for the wrong.  See Usher v. Los Angeles, 828 F.2d 556, 561-62 (9th Cir. 1987).  However, there

is an exception when the malicious prosecution was conducted with the intent of depriving the plaintiff

of equal protection of the laws or some other constitutional right.  Bretz v. Kelman, 773 F.2d 1026, 1031

(9th Cir. 1985) (en banc).  Therefore, to establish a claim for malicious prosecution under § 1983, a

plaintiff must (a) satisfy the elements of a claim for malicious prosecution under California law; and (b)

show that the malicious prosecution was conducted with the intent of depriving him of a constitutional

---

[1] To the extent that Plaintiff seeks to assert a separate claim for false arrest notwithstanding the discussion above, the Court will afford Plaintiff an opportunity to amend his pleadings.

1   right.  See Usher, 828 F.2d at 562.  The elements of malicious prosecution in California are (1) the

2   initiation and termination of a criminal prosecution in the plaintiff's favor; (2) the absence of probable

3   cause; and (3) malice.  Siebel v. Mittlesteadt, 41 Cal. 4th 735, 740 (2007).

4           Defendants move to dismiss the malicious prosecution claim brought against Officer Schmitz.

5   Defendants argue that: (a) Plaintiff fails to allege facts showing a lack of probable cause; (b) Plaintiff

6   fails to allege facts showing malice by Officer Schmitz; (c) Plaintiff fails to allege facts showing that

7   Officer Schmitz intended to deprive Plaintiff equal protection of the laws or some other constitutional

8   right; (d) Officer Schmitz is not the proper defendant to this claim because it was the district attorney

9   and not Officer Schmitz who filed a criminal complaint against Plaintiff and authorized his arrest; (e)

10  Officer Schmitz is entitled to qualified immunity; and (f) Officer Schmitz is entitled to immunity under

11  California Penal Code Section 847(b).  For all the reasons discussed below, the Court disagrees with

12  Defendants and DENIES the motion to dismiss with respect to this claim.

13                          **a.     Absence of Probable Cause**

14          An arrest must be supported by probable cause.  See Michigan v. Summers, 452 U.S. 692, 700

15  (1981).  Probable cause exists when officers have knowledge or reasonably trustworthy information

16  sufficient to lead a person of reasonable caution to believe that an offense has been committed by the

17  person being arrested.  United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing Beck v. Ohio,

18  379 U.S. 89, 91 (1964)).  Although conclusive evidence of an arrestee's guilt is not necessary to establish

19  probable cause, mere suspicion, common rumor, or even strong reason to suspect are surely not enough.

20  Id. (quoting McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984)).

21          In this case, Plaintiff alleges that his arrest was based solely on statements made by Mr. Silva.

22  However, according to Plaintiff, Mr. Silva lacked credibility.  Plaintiff emphasizes that Mr. Silva was

23  intoxicated at the time of the alleged assault, gave conflicting accounts as to where the alleged assault

24  took place, and initially was unable to identify any of his assailants.  Plaintiff alleges that despite being

25  aware of these clear deficiencies in Mr. Silva's credibility, Officer Schmitz failed to make any attempt

26  at corroborating Mr. Silva's version of the events through other sources.  Based on these allegations, a

27  reasonable inference can be drawn that Plaintiff's arrest was predicated on "mere suspicion" and not

28  probable cause.  See Stoot v. City of Everett, 582 F.3d 910, 919 (9th Cir. 2009) (to establish probable

7

1   cause, officers may not rely solely on statements made by the victim if circumstances indicate that the

2   statements are not reasonably reliable); Aprin v. Santa Clara Valley Transportation Agency, 261 F.3d

3   912, 925 (9th Cir. 2001) (same).

### b.   Malice

5   "Malice" relates to the subjective intent or purpose of the defendant. Downey Venture v. LMI

6   Ins. Co., 66 Cal. App. 4th 478, 494 (Ct. App. 1998). In the context of malicious prosecution, malice

7   requires a showing of improper purpose, one unrelated to bringing a perceived guilty person to justice.

8   Id. Malice, however, need not rise to the level of ill will; it "may range anywhere from open hostility

9   to indifference." Soukup v. Law Offices of Herbert Hafif, 39 Cal. 4th 260, 292 (2006) (citations and

10  internal quotation marks omitted).

11  Here, a reasonable inference can be drawn from Plaintiff's allegations that Officer Schwartz

12  acted with at least indifference toward Plaintiff. First, Plaintiff alleges that Officer Schwarz failed to

13  conduct a thorough investigation into the alleged assault despite the clear deficiencies in Mr. Silva's

14  credibility. See Soukup, 39 Cal. 4th at 292 (malice may be inferred from the same facts showing lack

15  of probable cause). Second, Plaintiff alleges that Officer Schwartz omitted from his report the fact that

16  Mr. Silva was heavily intoxicated at the time of the alleged assault, a fact material to any finding of

17  probable cause. Third, Plaintiff alleges that Officer Schwartz made false statements during Plaintiff's

18  preliminary hearing, which artificially buttressed a showing of probable cause. According to Plaintiff,

19  the culmination of Officer Schwartz's actions caused Plaintiff to be prosecuted without probable cause.

20  While this eventually may be proven untrue or the result of ordinary negligence, Plaintiff's allegations

21  are sufficient to show malice at this stage.

### c.   Intent to Deny a Constitutional Right

23  As noted above, to establish a claim for malicious prosecution under § 1983, a plaintiff must

24  show that the defendant acted with the intent or purpose of depriving the plaintiff of equal protection

25  of the laws or some other constitutional right. Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th

26  Cir. 1995) (citing Bretz, 773 F.2d at 1031). This requirement presupposes knowledge of or deliberate

27  indifference to the constitutional rights allegedly at issue. Poppell v. City of San Diego, 149 F.3d 951,

28  962 (9th Cir. 1998).

Plaintiff alleges that Officer Schmitz intended to deny him his constitutional rights under the Fifth and Sixth Amendments. Plaintiff's reliance on the Due Process Clause of the Fifth Amendment is mistaken, however, because that clause applies only to actions taken by the federal government. See Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008). In addition, Plaintiff's allegations do not support an inference that Officer Schmitz acted with the intent of denying Plaintiff a fair trial under the Sixth Amendment. Notably, Plaintiff alleges that his charges were dismissed *before* trial and there is no indication that trial witnesses or evidence were corrupted. Compare Cline v. Brusett, 661 F.2d 108, 112 (9th Cir. 1981) (intent to deny fair trial supported a § 1983 malicious prosecution claim where the plaintiff alleged that officers knowingly presented false evidence and perjured testimony at trial) with Johnson v. Barker, 799 F.2d 1396, 1400 (9th Cir. 1986) (no intent to deny fair trial where no trial was held and there was no indication that witnesses were corrupted).

It is clear that the constitutional underpinning of Plaintiff's malicious prosecution claim is the Fourth Amendment. See Albright v. Oliver, 510 U.S. 266, 275 (1994) (malicious prosecution claim under § 1983 may be based on a Fourth Amendment violation); Awabdy v. City of Adelanto, 368 F.3d 1062, 1069-70 (9th Cir. 2004) (same). The Fourth Amendment protects individuals from unreasonable seizures. U.S. Const. Amend IV. The same facts showing that Officer Schmitz maliciously caused Plaintiff to be arrested and prosecuted without probable cause support a showing that Officer Schmitz intended to violate Plaintiff's Fourth Amendment rights. Again, while this may later be proven to be untrue or result of nothing more than ordinary negligence, Plaintiff's allegations are sufficient to show intent at this stage.

### d.    Causation

To establish a claim under § 1983, a plaintiff must show that the defendant, acting under color of state law, subjected the plaintiff to or otherwise caused the plaintiff to be subjected to a deprivation of his rights secured by the Constitution or laws of the United States. See 42 U.S.C. § 1983; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). A person "subjects" another to a deprivation of a right if "he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson, 588 F.2d at 743. A person causes another to be subjected to a deprivation of a right "by setting in[to] motion a

1   series of acts by others which the actor knows or reasonably should know would cause others to inflict

2   the constitutional injury." Id. at 743-44.

3          The Ninth Circuit has explained that these concepts of causation do not necessarily limit claims

4   for malicious prosecution to prosecutors.  Rather, a claim may be brought against *any* person who has

5   wrongfully caused criminal charges to be filed against the plaintiff.  Awabdy, 368 F.3d at 1066.  For

6   example, in Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002), the plaintiff alleged that

7   a coroner conducted a deficient autopsy, disregarded facts tending to show that the plaintiff was not

8   guilty, and lied about the autopsy to cover up his own incompetence.  Id. at 1127.  The plaintiff further

9   alleged that this proximately caused the plaintiff to be wrongfully arrested and charged for murder.  Id.

10  The Ninth Circuit held that the plaintiff sufficiently alleged a claim for malicious prosecution under §

11  1983 against the coroner.  Id.

12         The facts alleged in this case are analogous to those alleged in Galbraith.  Plaintiff alleges that

13  Officer Schmitz conducted a deficient investigation, omitted information from his police report which

14  tended to show an absence of probable cause, and made false statements during Plaintiff's preliminary

15  hearing.  Plaintiff further alleges that Officer Schmitz's investigation, report, and statements served as

16  the basis for Plaintiff's prosecution and arrest.  These allegations are sufficient to show causation and

17  impose liability on Officer Schmitz under § 1983, even if Officer Schmitz did not ultimately authorize

18  or execute Plaintiff's arrest.

19         Defendants argue that Plaintiff cannot overcome the presumption of independent prosecutorial

20  judgment and the causation issue it presents.  The presumption of independent prosecutorial judgment

21  describes the assumption under the law that a prosecutor exercises independent judgment in deciding

22  whether probable cause to arrest exists.  Smiddy v. Varney, 665 F.2d 261, 266 (9th Cir. 1981) ("Smiddy

23  I").  Because of this presumption, investigating officers are generally not liable for damages when a

24  prosecutor files a criminal complaint against a suspect.  Id.  The causal link between the actions of the

25  investigating officers and any unlawful arrest or prosecution is presumed to have been broken by the

26  prosecutor's own actions.  See Beck, 527 F.3d at 862.  To rebut this presumption, a plaintiff must offer

27  evidence demonstrating that the prosecutor's judgment was somehow compromised, such as when an

28  investigating officer inappropriately pressures the prosecutor to file charges or when an investigating

10

1   officer omits relevant information from his report.  See Smiddy, 665 F.2d at 266-67; Harper v. City of

2   Los Angeles, 533 F.3d 1010, 1028 (9th Cir. 2008).

3       The presumption of prosecutorial independent judgment is an evidentiary presumption that is

4   applicable at the summary judgment stage to direct the order of proof; "*it is not a pleading requirement*

5   *to be applied to a motion to dismiss, before discovery has taken place.*"  Galbraith, 307 F.3d at 1126

6   (emphasis added).  Therefore, the Court need not reach this issue at this time.  Even if this issue were

7   ripe for consideration on a motion to dismiss, the Court would conclude that Plaintiff's allegations are

8   sufficient to overcome the presumption of prosecutorial independent judgment.  Plaintiff alleges that

9   Officer Schwartz omitted from his report the fact that Mr. Silva was heavily intoxicated at the time of

10  the alleged altercation.  This fact would have been material to a prosecutor in deciding whether Mr.

11  Silva's statements were credible and sufficient to establish probable cause.

12                              **e.    Qualified Immunity**

13      Qualified immunity shields government officials from liability for civil damages, "insofar as their

14  conduct does not violate clearly established statutory or constitutional rights of which a reasonable

15  person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The underlying purpose

16  of qualified immunity is to balance "the need to hold public officials accountable when they exercise

17  power irresponsibly and the need to shield officials from harassment, distraction, and liability when they

18  perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231 (2009).

19      Determining whether an official is entitled to qualified immunity requires a two-part analysis,

20  which may be taken in any order.  See Saucier v. Katz, 533 U.S. 194, 201 (2001); Pearson, 555 U.S. at

21  232-36.  First, the court must decide whether the facts alleged, when taken in the light most favorable

22  to the plaintiff, show that the defendant's conduct violated a statutory or constitutional right.  Saucier,

23  533 U.S. at 201.  Second, the court must determine whether that right was "clearly established."  Id.  A

24  right is clearly established if "it would be clear to a reasonable [official] that his conduct was unlawful

25  in the situation he confronted . . . or whether the state of the law [at the time of the violation] gave fair

26  warning to the official[] that [his] conduct was unconstitutional."  Clement v. Gomez, 298 F.3d 898, 906

27  (9th Cir. 2002) (quotation marks and citations omitted).  If the defendant's conduct did not violate a

28  statutory or constitutional right or if that right was not "clearly established," he is entitled to qualified

1    immunity.  See Saucier, 533 U.S. at 201-02.

2           Defendants cite Tomer v. Gates, 811 F.2d 1240, 1242 (9th Cir. 1987), and argue that malicious

3    prosecution does not generally implicate a clearly established constitutional right and therefore Officer

4    Schwarz is entitled to qualified immunity.  Defendants also argue that Officer Schwarz is entitled to

5    qualified immunity because he had a reasonable, albeit mistaken, belief that his actions were lawful

6    under clearly established law.

7           Defendants' arguments are unpersuasive.  First, while malicious prosecution may not implicate

8    a clearly established constitution right in of itself, it does constitute a clearly established constitutional

9    violation when, as here, prosecution allegedly results in an arrest without probable cause in violation of

10   the Fourth Amendment.  See Wilkins, 528 F.3d at 805-06.  Second, when viewed in the light most

11   favorable to Plaintiff, the facts alleged do not show that Officer Schwarz acted reasonably.  As framed

12   by the complaint, Officer Schwarz disregarded clear deficiencies in Mr. Silva's credibility, omitted

13   material information from his report pertaining to probable cause (i.e., Mr. Silva's intoxication), and

14   made false statements during Plaintiff's preliminary hearing that tended to artificially bolster a finding

15   of probable cause.  No reasonable officer could believe this conduct to be lawful.  See Stoot, 582 F.3d

16   at 919 (to establish probable cause, officers may not rely on statements that are not reasonably reliable);

17   Ovasapyan v. Frank, 405 Fed. Appx. 256, 258 (9th Cir. 2010) ("It is clear to a reasonable officer that

18   omitting material, exculpatory information from reports submitted to a district attorney . . . constitutes

19   unlawful conduct.") (citing Awabdy, 368 F.3d at 1067-68).  Thus, Officer Schwarz is not entitled to

20   qualified immunity at this time.

21                    **f.      Immunity Under Section 847(b)**

22          California Penal Code Section 847 provides that there shall be no civil liability on the part of,

23   or any cause of action against, a peace officer acting within the scope of his or her authority for false

24   arrest under certain circumstances, such as when a peace officer had reasonable cause to believe that the

25   arrest was lawful.  Cal. Penal. Code § 847(b).  However, "[i]mmunity under § 1983 is governed by

26   federal law; *state law cannot provide immunity from suit for federal civil rights violations*."  Wallis v.

27   Spencer, 202 F.3d 1126, 1144 (9th Cir. 2000) (emphasis added).  Thus, Officer Schwarz is not entitled

28   to immunity under California Penal Code Section 847.

### 3.     Expungement of Arrest Record

Defendants move to dismiss Plaintiff's claim for declaratory relief and expungement of arrest record pursuant to 28 U.S.C. § 2201.  In doing so, Defendants simply argue that Plaintiff fails to allege facts showing that his arrest was unlawful.  However, as discussed above, the Court has concluded that Plaintiff alleges sufficient facts in connection with his claim for malicious prosecution to show that he was arrested without probable cause.  Defendants' argument therefore fails, and the motion to dismiss is DENIED with respect to this claim.

### 4.     Official Capacity Claim For Attorney's Fees

Defendants move to dismiss Plaintiff's official capacity claim against Officer Schmitz, which seeks only the recovery of attorney's fees under 42 U.S.C. § 1988.  (Doc. 1, Compl., ¶ 4.)  Defendants argue that under <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985), Plaintiff's official capacity claim against Officer Schmitz is essentially a claim against the City and thus "Plaintiff cannot keep Officer Schmitz in this case under the guise of suing him in his 'official capacity' if the Court otherwise concludes that some or all of the claims asserted against him in his personal capacity should be dismissed." (Doc. 14-1, Defs.' Mem. of P. & A., at 6.)  In other words, Defendants challenge whether it is proper to name and maintain Officer Schmitz as the defendant to this claim.

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 690 n.55 (1978).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity." <u>Graham</u>, 473 U.S. at 166.  For this reason, at least one district court in the Ninth Circuit has stated that where a plaintiff brings an official capacity suit against an officer of a local government, "it would be proper for the Court[,] upon request[,] to dismiss the officer and substitute instead the local government entity as the correct defendant." <u>Luke v. Abbott</u>, 954 F. Supp. 202, 204 (C.D. Cal. 1997). <u>But</u> <u>see</u> <u>Berry v. Baca</u>, Case No. CV 01-02069 DDP (Shx), 2002 U.S. Dist. LEXIS 5903, at *6 (C.D. Cal. Feb. 26, 2002) (declining to follow <u>Luke</u> because it is "axiomatic" that the plaintiff is the master of his complaint and controls who is named as a defendant).

But this begs the related and, quite frankly, more important question of whether Plaintiff has

1  adequately alleged a claim in this regard in the first place.  To establish a claim under § 1983 against a

2  local government entity or an officer in his official capacity, a plaintiff must show that the government

3  entity maintained a policy or custom that served as the moving force of a constitutional violation.  See

4  Monell, 436 U.S. at 694-95; Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011).  Here,

5  there are no allegations that Plaintiff's malicious prosecution was caused by a City policy or custom.

6  Thus, Plaintiff fails to state a claim in this regard, and it is immaterial whether Officer Schmitz or the

7  City is named as the defendant to the claim.

8       Plaintiff appears to argue in his opposition that he need not establish an official capacity claim

9  in order to recover attorney's fees from Officer Schmitz in his official capacity.  Plaintiff suggests that

10 if he prevails against Officer Schmitz on his personal capacity claim for malicious prosecution, he may

11 then elect to recover attorney's fees from Officer Schmitz in his official capacity.  As support for this

12 argument, Plaintiff quotes a single line from the Supreme Court's decision in Hutto v. Finney, 437 U.S.

13 678 (1978), which provides:

14       The legislative history [of the Civil Rights Attorney's Fees Award Act of 1976] is . . .
         plain: It is intended that [an award of] attorney's fees, like other items of cost, will be
15       collected either directly from the official, *in his official capacity*, from funds of his
         agency or under his control, or from the State or local government (whether or not the
16       agency or government is a named party).

17 Id. at 694 (internal quotation marks, brackets, and citation omitted) (emphasis added by Plaintiff in his

18 opposition to Defendants' motion to dismiss).

19      Plaintiff is mistaken and demonstrates a misunderstanding of two basic issues.  First, personal

20 capacity claims are entirely distinct from, and not interchangeable with, official capacity claims under

21 § 1983.  In particular, the claims have different bases for liability.  "[T]o establish *personal* liability in

22 a § 1983 action, it is enough to show that the [defendant], acting under color of state law, caused the

23 deprivation of a federal [or constitutional] right."  Graham, 473 U.S. at 166 (emphasis in original).  In

24 contrast, and as already explained above, to establish liability against a local government entity or an

25 officer in his official capacity, a plaintiff must show that a government *policy or custom* served as the

26 moving force for the deprivation of a federal or constitutional right.  See Monell, 436 U.S. at 694-95;

27 Dougherty, 654 F.3d at 900.

28      Second, "[attorney's] fees and merits liability run together."  Graham, 473 U.S. at 171.  Thus, a

plaintiff who prevails against a defendant in his personal capacity is entitled to recover attorney's fees

from that defendant in his personal capacity, while a plaintiff who prevails against a defendant in his

official capacity is entitled to recover attorney's fees from that defendant in his official capacity. See

id. ("Only in an official-capacity action is a plaintiff who prevails entitled to look for relief, both on the

merits and for fees, to the government entity."). Accordingly, in Graham, the Supreme Court held that

the Sixth Circuit erred when it awarded attorney's fees against the State of Kentucky when the plaintiff

prevailed in a § 1983 action against a state trooper on a personal capacity claim but not on an official

capacity claim. See id. at 168-70.

The Supreme Court's decision in Hutto provides no differently. In Hutto, Arkansas prisoners

sued under § 1983 and prevailed against prison administrators in their *official capacity* for violating the

Eighth Amendment. See Hutto, 437 U.S. at 680-81; 693. On appeal, the Eighth Circuit affirmed the

remedial orders entered by the district court below and awarded attorney's fees to the prisoners for the

cost of the appeal, which were to be paid out of state funds. Id. at 680-81. The Attorney General for the

State of Arkansas argued before the Supreme Court that the Eighth Circuit's award of attorney's fees

was barred by the Eleventh Amendment, but the Supreme Court disagreed and affirmed the award of

attorney's fees. See id. at 694-700.

Against this backdrop, Plaintiff's selected quote from Hutto is rather unremarkable and only

confirms what the Court has already explained above. Specifically:

> Hutto holds only that, when a State in a § 1983 action has been prevailed against for
> relief on the merits, either because the State was a proper party defendant or because state
> officials properly were sued in their official capacity, fees may also be available from the
> State under § 1988. Hutto does not alter the basic philosophy of § 1988, namely, that fee
> and merits liability run together. . . . *Hutto neither holds nor suggests that fees are*
> *available from a government entity simply because a government official has been*
> *prevailed against in his or her personal capacity.*

Graham, 473 U.S. at 170-71 (emphasis added).

In sum, to the extent that Plaintiff seeks attorney's fees against Officer Schmitz in his official

capacity, Plaintiff must first assert a claim against Officer Schmitz in his official capacity. However,

Plaintiff has not done so here. Plaintiff does not allege that the City maintained a policy or custom that

served as the moving force behind his alleged malicious prosecution. Accordingly, Plaintiff's official

capacity claim for attorney's fees is DISMISSED with leave to amend.

**5.     Punitive Damages**

Finally, Defendants move to strike Plaintiff's request for punitive damages.  Defendants argue that Plaintiff's conclusory allegation that Officer Schmitz acted with malice cannot support an award for punitive damages.

As a preliminary matter, the Court clarifies that Defendants' challenge to Plaintiff's request for punitive damages is procedurally proper, despite Plaintiff's suggestion in his opposition that it is not.  It is true that Defendants refer in their motion to "striking" Plaintiff's request for punitive damages and that a motion to strike pursuant to Federal Rule of Civil Procedure 12(f) is not the appropriate avenue for challenging a request for punitive damages.  See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973-76 (9th Cir. 2010).  Nevertheless, despite Defendants' choice of words the substantive thrust of Defendants' argument is that Plaintiff's allegations are insufficient to support punitive damages.  This is consistent with a Rule 12(b)(6) motion, which is an appropriate avenue for challenging a request for punitive damages.  Id. at 974.  Therefore, the Court construes Defendants' motion as such.  See, e.g., Kelley v. Corrections Corp. of Am., 750 F. Supp. 2d 1132, 1146 (E.D. Cal. 2010) (converting a motion to strike punitive damages under Rule 12(f) into a motion to dismiss under Rule 12(b)(6) when it was clear that the defendant sought to challenge the sufficiency of the plaintiff's allegations supporting an award of punitive damages).

Turning to the merits of Defendants' challenge, a plaintiff may recover punitive damages in an action under § 1983 where the defendant's conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).  As already explained in the Court's discussion of malice, Plaintiff's allegations are sufficient to show at this stage that Officer Schmitz acted with indifference to Plaintiff and his constitutional rights.  This supports a request for punitive damages at this stage.  Accordingly, Defendants' motion to dismiss is DENIED with respect to this matter.

**B.     Anti-SLAPP Motion to Strike**

Defendants move pursuant to California's anti-SLAPP statute to strike Plaintiff's claim against Officer Schmitz for malicious prosecution.  In doing so, Defendants assume that Plaintiff brings his claim for malicious prosecution under California tort law because, in Defendants' view, Plaintiff has

16

failed to allege facts sufficient to support a claim for malicious prosecution under § 1983.  However, Defendants' assumption is wrong.  Plaintiff has explicitly brought his claim for malicious prosecution under § 1983 and, as discussed above, has alleged facts sufficient to support such a claim.  Therefore, it is clear that Plaintiff's claim arises out of federal, not state law, and California's anti-SLAPP statute does not apply.  See Hilton v. Hallmark Cards, 599 F.3d 894, 901 (9th Cir. 2010) ("[California's] anti-SLAPP statute does not apply to federal causes of action."); Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc., 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006) ("Although the anti-SLAPP statute does apply to state law claims brought in federal court, *it does not apply to federal question claims in federal court* because such application would frustrate substantive federal rights.") (emphasis added) (citations omitted).  Accordingly, Defendants' anti-SLAPP motion to strike is DENIED.

**IV.    CONCLUSION**

In accordance with the above, the Court:

1.    GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss as follows:

    a.    Plaintiff's official capacity claim for attorney's fees is DISMISSED with leave to amend; and

    b.    Defendants' motion to dismiss is DENIED in all other respects.

2.    DENIES Defendants' anti-SLAPP motion to strike.

3.    ORDERS Plaintiff to file and serve any amended complaint he elects to submit on or before May 29, 2012.

IT IS SO ORDERED.

**Dated:    May 7, 2012**                    /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE