UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC MILLER, | Case No. 1:12-cv-0137 LJO SAB |
| Plaintiff, | ORDER DENYING DEFENDANTS' MOTION FOR A NEW TRIAL |
| v. | |
| HANFORD POLICE OFFICER STEVE SCHMITZ, et al., | (Doc. 137) |
| Defendants. | |

Defendants Hanford Police Officer Steve Schmitz ("Officer Schmitz") and the City of Hanford ("the City") (collectively "Defendants") move for a new trial. Plaintiff Isaac Miller ("Mr. Miller") has filed an opposition to the motion, and Defendants have filed a reply. After careful consideration of the parties' submissions, the Court DENIES Defendants' motion for a new trial.

**I.    BACKGROUND**

This action concerns Plaintiff's claims for malicious prosecution against Officer Schmitz under 42 U.S.C. § 1983 and expungement of arrest records against the City of Hanford. This case was tried before a jury, and on November 27, 2013, the jury returned a verdict in Plaintiff's favor in the amount of $500,000 in compensatory damages. The award was offset by $35,000 per the parties' stipulation,

1  resulting in a net award of $465,000 in damages. The Court also ordered Plaintiff's arrest records be
2  expunged. Judgment was entered on December 2, 2013.

3        On December 30, 2013, Defendants filed the instant motion for a new trial. Defendants argue
4  that the jury's verdict is contrary to the clear weight of the evidence because the evidence presented at
5  trial was insufficient to prove (1) that Officer Schmitz lacked probable cause; (2) that Officer Schmitz
6  acted with malice; or (3) that the District Attorney's Office did not exercise its independent judgment
7  in deciding to charge and prosecute Mr. Miller. Defendants also argue in the alternative that the jury
8  award should be reduced in light of the evidence presented at trial. Mr. Miller filed an opposition on
9  January 16, 2014, and Defendants filed a reply on January 23, 2014.

## II.    LEGAL STANDARD

11        Under Rule 59, a district court has discretion to grant a motion for a new trial "for any reason
12  for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P.
13  59(a)(1)(A). Because Rule 59 does not specify the grounds on which a motion for a new trial may be
14  granted, courts are generally "bound by those grounds that have been historically recognized." Zhang
15  v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir 2002). Historically recognized grounds for
16  a new trial include: (1) the verdict is contrary to the clear weight of the evidence; (2) the damages are
17  excessive; and (3) the trial was unfair for some other reason. Molski v. M.J. Cable, Inc., 481 F.3d 724,
18  729 (9th Cir. 2007).

19        When resolving a motion for a new trial, the court does not need to view the evidence from the
20  perspective most favorable to the prevailing party. Landes Constr. Co., Inc. v. Royal Bank of Canada,
21  833 F.2d 1365, 1371 (9th Cir. 1987). Instead, the court must "assess the credibility of the witnesses"
22  and "weigh the evidence as [the court] saw it . . . ." Molski, 481 F.3d at 729; Landes Constr., 833 F.2d
23  at 1371. Then, if "having given full respect to the jury's findings, the judge on the entire evidence is
24  left with the definite and firm conviction that a mistake has been committed," the judge may grant a
25  new trial. Landes Constr., 833 F.2d at 1371 (quoting 11 C. Wright & A. Miller, Federal Practice and
26  Procedure § 2806, at 48-49 (1973)).

27        This is a "stringent" standard when the party moving for a new trial challenges the sufficiency
28  of the evidence supporting the verdict. Venegas v. Wagner, 831 F.2d 1514, 1519 (9th Cir. 1987). A

1  new trial may be granted on this ground only if the verdict is against the *great* weight of the evidence
2  or it is clear that the jury has reached a *seriously* erroneous result.  Johnson v. Paradise Valley Unified
3  School Dist., 251 F.3d 1222, 1230 (9th Cir. 2001).  The mere fact that the court might have reached a
4  different conclusion had it been the one deciding the issue does not warrant a new trial.  See Wilhelm
5  v. Associated Container Transportation (Australia), Ltd., 648 F.2d 1197, 1198 (9th Cir. 1981).  "[A]
6  decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system,
7  certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his
8  own doubts in the matter."  Landes Constr., 833 F.2d at 1371 (citation omitted).

### III.  DISCUSSION

**A.  Probable Cause**

Probable cause exists when an officer has "knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been . . . committed by the person being arrested."  United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)).  Probable cause is an objective standard that takes into account the totality of the circumstances known to the officer at the time of the arrest.  John v. City of El Monte, 515 F.3d 936, 940 (9th Cir. 2008).  Although conclusive evidence of guilt is not necessary to establish probable cause, "[m]ere suspicion, common rumor, or even strong reason to suspect are not enough."  Lopez, 482 F.3d at 1072 (citation omitted).

To establish probable cause in this case, Officer Schmitz relied on Ronald Silva's ("Mr. Silva's") statements regarding the alleged altercation that took place between him and Mr. Miller on February 17, 2010.  Therefore, the critical issue in this case was whether Mr. Silva's statements were reasonably trustworthy or reliable.  As the Ninth Circuit has explained: "[O]fficers may obviously rely on statements made by the victims of a crime to identify potential suspects.  But such information does not, on its own, support a finding of probable cause *if the information is not reasonably trustworthy or reliable*."  Stoot v. City of Everett, 582 F.3d 910, 919 (9th Cir. 2009) (emphasis added).  See Fuller v. M.G. Jewelry, 950 F.2d 1437, 1444 (9th Cir. 1991) (an officer has a duty to investigate the basis of a victim's or witness' report).

///

The Court sees this issue just as it did on summary judgment.[1] There was evidence offered at trial regarding Mr. Silva's statements to Officer Schmitz that tended to undercut their trustworthiness and reliability. First, the evidence showed that when Officer Schmitz first interviewed Mr. Silva at the hospital after the alleged altercation took place, Mr. Silva clearly appeared to have been drinking: his hospital record noted the presence of alcohol in his system, he smelled fairly strongly of alcohol from a distance of three feet, his speech was slightly slurred, and his eyes were slightly bloodshot. Second, there were some inconsistencies in Mr. Silva's statements. Mr. Silva first claimed that the altercation took place at Applebee's, but later claimed that it took place at Chili's. Mr. Silva also claimed that the name of his assailant was "Jacob" or "Jason" Miller, but then identified Plaintiff (Isaac Jared Miller) in a photo line-up. Third, Officer Schmitz testified at trial that Mr. Silva's demeanor while making his statements was similar to his demeanor at trial. The Court found Mr. Silva to be erratic, contradictory, and, quite frankly, not credible as a witness.

However, these circumstances alone would not have been enough to undercut the reliability of Mr. Silva's statements. This is particularly true since the evidence did not support the conclusion that Mr. Silva was totally intoxicated and the evidence did show that Mr. Silva was later able to describe in detail one of his alleged assailants. Thus, as the Court reasoned in its order on summary judgment, this case hinged on the testimony of Mike Signorile ("Mr. Signorile"); specifically, whether Mr. Signorile, a Chili's employee, told Officer Schmitz that, contrary to Mr. Silva's statements, no fight took place at Chili's that night. If the jury found that to be true, the jury could also conclude that – when combined with Mr. Silva's alcohol consumption, somewhat inconsistent statements, and erratic demeanor – Mr. Silva's statements were not reasonably trustworthy; that Officer Schmitz did not have probable cause to initiate Mr. Miller's arrest; and Officer Schmitz should have at the very least investigated the matter further. See Stoot, 582 F.3d at 919; United States v. Ortiz-Hernandez, 427 F.3d 567, 574 (9th Cir. 2005) ("As a corollary . . . of the rule that the police may rely on the totality of facts available to them

---

[1] This is not to say that in deciding this motion the Court is confined to its summary judgment order. As Defendants correctly note, the evidence presented at trial is not the same as the evidence offered on summary judgment. Moreover, the legal standard for deciding a motion for a new trial differs greatly from that of a motion for summary judgment. The Court simply suggests that the issues that the Court found important on summary judgment are the same issues that the Court finds important in deciding Defendants' motion for a new trial.

1  in establishing probable cause, they also may not disregard facts tending to dissipate probable cause.")
2  (citation omitted).

3       Defendants argue that the clear weight of the evidence offered at trial shows that Mr. Signorile
4  never spoke with Officer Schmitz.  The evidence, however, was not so clear cut.  To be sure, Officer
5  Schmitz testified at trial that he does not recall ever speaking with Mr. Signorile.  (See Doc. 139-1 at
6  269:9-11.)  Nonetheless, there was circumstantial evidence that he did.  Mr. Signorile testified that he
7  was contacted on the telephone while working at Chili's by a man who identified himself as a Hanford
8  police officer.  (Doc. 131 at 13:2-25.)  Moreover, it was undisputed that Officer Schmitz was the lead
9  investigator on Mr. Silva's case and there was nothing to suggest that any other officer involved in the
10 case (e.g., Officer Alvarez) called Chili's.  (Id. at 23:1-17.)  Finally, Officer Schmitz made a notation
11 in his notebook on March 2, 2010, which indicated the phone number to Chili's along with two names.
12 (Jt. Ex. 4.)  One of the names was "Mike."  (Id.)  As a whole, this evidence presented a factual dispute
13 as to whether Officer Schmitz ever contacted Mr. Signorile, a factual dispute that the jury could have
14 reasonably resolved either way.

15       Defendants attempt to undermine fatally Mr. Signorile's testimony by emphasizing that (1) Mr.
16 Signorile testified that he spoke to the purported Hanford police officer no more than three days after
17 the alleged altercation, yet (2) Officer Schmitz was not on duty and therefore not working during that
18 time.  But again, the evidence presented at trial was not so clear.  First, in light of all the circumstantial
19 evidence discussed above, the jury could have reasonably discredited Officer Schmitz's assertion that
20 he never conducts any work while not on duty.  Second, a closer examination of Mr. Signorile's trial
21 testimony makes it apparent that he was not exactly sure when the conversation took place.  At times,
22 Mr. Signorile testified that the conversation occurred no more than three days after the alleged attack.
23 (See, e.g., Doc. 131 at 30:21-24).  At other times, Mr. Signorile indicated that he could only estimate
24 that the conversation occurred "a few days" after the alleged altercation.  (Id. at 45:1-8.)  Still at other
25 times, Mr. Signorile conceded that he simply could not remember.  (Id. at 28:23-30:1.)  Weighing Mr.
26 Signorile's equivocal testimony and demeanor at trial, the most reasonable conclusion that the Court
27 can reach is that Mr. Signorile was contacted "pretty recent" after the alleged assault, perhaps "a few
28 days after," but certainly not "months later."  (Id. at 45:1-10.)  This is generally consistent with Officer

1 Schmitz's return to work on February 22, 2010 (five days after the alleged assault), as well as Officer
2 Schmitz's notebook entry on March 2, 2010 indicating the telephone number to Chili's and the name
3 "Mike." As such, Mr. Signorile's testimony as to when the conversation took place is not the smoking
4 gun that Defendants claim it to be.

5 Defendants maintain that even if Mr. Signorile did speak with Officer Schmitz, the content of
6 the conversation did not dissipate probable cause because Mr. Signorile testified that he explained to
7 the purported officer that he himself did not witness all the events of that night. (See id. at 39:10-12.)
8 However, Mr. Signorile clarified that his knowledge was based on what he had observed *and what he*
9 *had heard from other people*.[2] (See id. at 35:21-36:12, 39:13-17.) This does not detract meaningfully
10 from the significance of Mr. Signorile's statement that "no fight" occurred at Chili's that night:

11 Q. What do you recall about the conversation?

12 A. Just asked me if there was an incident that happened the night that we were talking about. Just let him know there was no incident, no fight, no nothing that
13 happened.

14 * * *

15 Q. Now, to the best of your recollection, Mr. Signorile, what specifically did you tell the officer who called you on the phone?
16
17 A. I just remember he was asking me if there was an altercation between Mr. Miller and – or actually, he just asked me what happened and I just told him, you know, the gentlemen were talking at the bar, left. That was it. No fight, no
18 argument. I didn't hear any argument or there was no – nothing that happened.

19 (Id. at 14:3-6, 14:21-15:1.) If anything, the suggestion that several other people also indicated that no
20 fight took place tends to *enhance* the significance of Mr. Signorile's statements and make Mr. Silva's
21 statement to the contrary all the more unreliable.

22 Viewing all the evidence offered at trial as a whole, the jury's conclusion that Officer Schmitz
23 lacked probable cause to initiate Mr. Miller's arrest is not contrary to the great weight of evidence, nor
24 is it seriously erroneous.

25 ///

26 ―――――――――

27 [2] There are no hearsay concerns here. Mr. Signorile's statements are not being used to prove the truth of the matter asserted; rather, they are being used to establish what information Officer Schmitz had in his possession. And in any event, an officer may rely on hearsay in determining probable cause. Hart
28 v. Parks, 450 F.3d 1059, 1066 (9th Cir. 2006).

**B.     Malice and Prosecutorial Independence**

"Malice" relates to the subjective intent or purpose of the defendant. Soukup v. Law Offices of Herbert Hafif, 39 Cal. 4th 260, 292 (2006). It requires a showing of improper purpose, one unrelated to bringing a perceived guilty person to justice. Id. Malice, however, need not rise to the level of ill will; it may range anywhere from open hostility to indifference. Id.

Since it was not contrary to the great weight of evidence for the jury to conclude that Officer Schmitz contacted Mr. Signorile, it was also not contrary to the great weight of the evidence for the jury to find malice. When Officer Schmitz testified at a preliminary hearing, he made no mention of Mr. Signorile or his exculpatory remarks:

> Q. All right, did you make any attempt to determine whether anyone at Chili's was aware of the incident that occurred on the 17th?
>
> A. Yes.
>
> Q. Who did you speak to?
>
> A. I actually went to the restaurant and checked for the bartender and I believed the waitress that might have been on duty that he referred to that night.
>
> Q. Did you speak to them?
>
> A. No.
>
> * * *
>
> Q. Did you talk to anyone else at Chili's as to whether they observed an incident that occurred on the 17th?
>
> A. No.

(Doc. 139-12 at 25:9-19; 26:17-20.) If the jury concluded that Officer Schmitz did in fact speak with Mr. Signorile, a jury could also conclude that Officer Schmitz acted maliciously by knowingly making false statements to the clear detriment to Mr. Miller's criminal defense.

This evidence is also sufficient to rebut the presumption of prosecutorial independence. To rebut the presumption of independent prosecutorial judgment, a plaintiff must offer evidence showing that the prosecutor's judgment to prosecute was somehow compromised, such as when a police officer omits material information from his report and the prosecutor relies on the deficient report in deciding to file criminal charges. See Harper v. City of Los Angeles, 533 F.3d 1010, 1028 (9th Cir. 2008). For

1  example, in Barlow v. Ground, 943 F.2d 1132 (9th Cir. 1991), the Ninth Circuit concluded that there
2  was sufficient evidence to rebut the presumption of independent prosecutorial judgment where (1) the
3  prosecutor's only source of information regarding the arrest was the arresting officers' reports; and (2)
4  the officers' reports omitted important information, including the fact that a witness corroborated the
5  plaintiff's version of the events. See id. at 1137. Here, there was evidence from which the jury could
6  reasonably conclude that Officer Schmitz omitted critical information from his report and preliminary
7  hearing testimony: Officer Schmitz made no mention of Mr. Signorile or his statement that from what
8  he knew of the matter no fight took place at Chili's. Moreover, it was undisputed that the prosecutors
9  in this case relied entirely on Officer Schmitz's investigation.

10  Defendants note that Mr. Miller failed to offer any evidence at trial – whether from an expert
11  or any other witness – that this omission would have made any difference to a prosecutor's decision to
12  pursue criminal charges. Defendants highlight remarks made by the Court during trial regarding this
13  general issue:

> THE COURT: If you are going to present evidence up to a point and then stop and not have any evidence at all that the District Attorney involved in the case, it would have made a difference or should have made a difference, then what's the relevance of that?
>
> You can have testimony all you want about a police procedure expert coming in and saying, "This is what an officer should have done. This is what a good investigation would have done," but that's not relevant unless there is some second dropping of the shoe, and that is, that it would have made a difference.

19  (Doc. 139-9 at 8:24-9:9.) But the Court's remarks were made about alleged flaws in police procedures
20  as a general matter and did not relate to Mr. Signorile's exculpatory statements in particular. The jury
21  could have concluded reasonably that Mr. Signorile's made plainly exculpatory statements that would
22  have been material to the prosecutors in Mr. Miller's criminal case, particularly in light of D.A. Sarah
23  Hacker's testimony at trial that she decided to dismiss the criminal charges against Mr. Miller due to
24  exculpatory statements from several witnesses who were not provided to her by Officer Schmitz. (See
25  Doc. 130 at 68:8-69:3.)

**C.   Damages**

27  It is not entirely clear on what grounds Defendants attack the jury's damages award. It appears
28  that Defendants simply argue that the jury's award cannot stand because the jury's findings regarding

liability are contrary to the clear weight of the evidence. In other words, Defendants reiterate that (1) there was probable cause to arrest Mr. Miller; (2) Officer Schmitz did not act with malice; and (3) the District Attorney's Office exercised its prosecutorial independence. As explained above, the Court is not convinced that the great weight of the evidence favors Defendants' position or that the jury erred on these issues.

To the extent that Defendants contend that the amount of the damages award is excessive, the Court disagrees. The jury awarded Mr. Miller $500,000 in compensatory damages. Of the $500,000, the jury could have reasonably awarded Mr. Miller $108,811.79 for the expenses that he incurred for his criminal defense. As for the remaining amount, the jury could have concluded reasonably that that amount was reasonable compensation for Mr. Miller's emotional distress. Several witnesses testified that Mr. Miller became depressed, withdrew from his family, and was disconnected from his newborn daughter due to the stress of his criminal prosecution, which lasted nearly one year. Thus, as a whole, the Court finds that the jury's damages award is not "grossly excessive or monstrous." Lambert v. Ackerley, 180 F.3d 997, 1011 (9th Cir. 1999) (en banc).

## IV.  CONCLUSION

In sum, while the Court might have decided this case differently had it been the fact finder, the Court cannot say with definite and firm conviction that the jury's conclusions and verdict are against the great weight of the evidence or are seriously erroneous. Accordingly, Defendants' motion for a new trial is DENIED.[3]

IT IS SO ORDERED.

Dated:   **February 18, 2014**              /s/ Lawrence J. O'Neill
                                            UNITED STATES DISTRICT JUDGE

---

[3] In their motion to stay enforcement of judgment, Defendants indicated that they may file an appeal if their motion for a new trial is denied. (See Doc. 145 at 2.) The Court will enter an amended judgment incorporating all awards of prejudgment interest and attorney's fees. Defendants will be free to pursue any appeal thereafter.

9