**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ISAAC MILLER,** | **1:12-cv-00137-LJO-SAB** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES** |
| **v.** | |
| **STEVEN JOHN SCHMITZ, Hanford Police Officer and CITY OF HANFORD, California,** | |
| **Defendants.** | |

## I.  INTRODUCTION

This civil rights action pursuant to 42 U.S.C. § 1983 proceeded to jury trial where a verdict for Plaintiff was entered in the amount of $500,000 in damages.  Following the trial, Plaintiff filed a motion for attorneys' fees and costs as the prevailing party under 42 U.S.C. §1988 in the amount of $459,682.45, which Defendants opposed.   The Court granted the request in part, awarding $201,871.36.  Plaintiff appealed this decision, and on June 22, 2016, the Ninth Circuit affirmed this Court's determination of a reasonable hourly rate in awarding fees, but remanded for a more clear explanation for the reduction of the number of hours expended by Plaintiff's counsel.  Following the appellate court remand, the parties engaged in limited discovery relevant to the fee issue and filed supplemental briefs.

For the reasons set forth below, Plaintiff's request for attorneys' fees is GRANTED IN PART and DENIED IN PART.

1

## II.   PROCEDURAL AND FACTUAL HISTORY

On January 29, 2012, Plaintiff filed this action for civil rights violations against Defendants Officer Steven John Schmitz ("Schmitz"), Ronald Silva ("Silva") and the City of Hanford ("the City") based on Plaintiff's arrest and prosecution following an altercation that occurred on February 17, 2010. This Court construed Plaintiff's complaint as one alleging claims for malicious prosecution against Schmitz under 42 U.S.C. § 1983, for expungement of Plaintiff's arrest record by the city pursuant to 28 U.S.C. § 2201, and for malicious prosecution against Silva under California law.

On April 15, 2013, Plaintiff and Silva reached a settlement agreement.  On August 6, 2013, the Court denied Schmitz and the City's (collectively, "Defendants") motion for summary judgment of Plaintiff's claims against them.

A 7-day jury trial was held on the two claims against Defendants.  On November 27, 2013, the jury returned a favorable verdict for Plaintiff as to both claims and awarded Plaintiff $500,000 in damages.  On December 30, 2013, Plaintiff filed a motion for attorneys' fees and costs pursuant to 42 U.S.C. §1988(b).

Defendants opposed the request, asserting the unreasonableness of both Plaintiff's requested hourly rate and the number of hours Plaintiff's counsel and his staff expended on the litigation. Defendants also argued that Plaintiff's request for reimbursement for the costs of his investigator, Ivan Hurd, was deficient in that Mr. Hurd did not submit a declaration, utilized block billing to document his time, and billed for time Mr. Hurd spent observing trial, which was unnecessary.  (Doc. 153.)

Plaintiff filed a reply asserting all of his attorneys' fees and costs should be awarded.  Plaintiff also supplemented his motion for attorneys' fees and costs seeking an additional $19,335 for attorneys' fees associated with briefing the motion itself.  (Doc. 159.)

On February 18, 2014, the Court issued an order reducing Plaintiff's counsel's requested hours by 60 percent for work performed by attorneys Kevin Little and Alex Checkelnik, law clerk Lorena Garcia, and excluded all hours worked by attorney Michelle Tostenrude and Maxine Vazquez as

1  clerical in nature; the Court awarded a total of $171,690.50 for all work performed on the case by Mr.

2  Little and his associates and staff.  The Court also awarded $30,180.86 in costs.  (Doc. 163.)

3  On February 24, 2014, Plaintiff filed a motion for reconsideration, which was denied on April

4  29, 2014.  (Doc. 194.)  Plaintiff filed a Notice of Appeal on May 19, 2014.  On appeal, the Court's

5  order on Plaintiff's motion for attorneys' fees was affirmed in part, and remanded in part.  (Doc. 202.)

6  Following remand, Plaintiff served a subpoena seeking production of Defendants' counsel's billing

7  records, and Defendants filed a motion to quash the subpoena, which was granted in part.  After

8  compliance with a modified version of the subpoena, the parties filed supplemental briefs regarding

9  the issue of attorneys' fees.

10  On remand, Plaintiff has modified his fee request and seeks reimbursement for (1) the time the

11  Court originally reduced from Mr. Little's billing; (2) attorney's fees for appellate work; and (3)

12  attorneys' fees for remand proceedings.  Plaintiff's request for attorneys' fees prior to appeal includes

13  the 1,199.81 hours originally billed,[1] subtracting the 459.88 hours already compensated pursuant to the

14  Court's original order, and subtracting 45.5 hours Mr. Little has reduced (after appeal) from his time

15  expended during trial.  (Doc. 211, p. 13. p. 84-87.)  In total, Plaintiff seeks compensation for 694.43[2]

16  hours of time at $350 per hour for pre-appeal work, 118.2 hours of time for appellate work at $375 per

17  hour; and 8 hours for work upon remand at $400 per hour.  (Doc. 218.)

18  Defendants oppose this request arguing the initial 60-percent reduction of Mr. Little's time was

19  justifiable.  Alternatively, Defendants request the Court reduce 192.52 hours billed by Mr. Little as

20  unreasonable, and request additional reductions to the supplemental time requested for work

21  performed post-trial and reductions for time spent on work related to the appeal.  (Doc. 217, 24:7-14.)

---

22  [1] This hourly total is comprised of 1,149.71 hours expended by Mr. Little from January 2012 through December 2013 (Doc.

23  135-1) plus 50.1 hours worked by Mr. Little from December 2013 through January 2014 on post-trial proceedings before this Court.  (Doc. 159-1).

24  [2] Plaintiff's brief states that his request is as follows:  "Trial Fees:  $226,950.05, representing compensation for the reduced hours of 648.43 [] (1199.81 total fees billed, minus 459.88 for which the undersigned has already been paid, minus the 45.5

25  written off trial hours at $350 per hour."  (Doc. 218, 5:19-21.)  The problem with this, however, is that 1199.81 − 459.88 − 45.5 = 694.43 hours, not 648.43.

3

Plaintiff responds that Defendants' counsel billed 1,511.3 hours in this litigation, which does not include any time spent after November 28, 2016.  (Doc. 218.)  Plaintiff maintains that Defendants' counsel's billing hours, although not dispositive, corroborates the reasonableness of Mr. Little's nearly 1,200 hours spent prosecuting the case (pre-appeal) for Plaintiff.

## III.   <u>ANALYSIS</u>

### A.   Legal Standard

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b), authorizes district courts to award "a reasonable attorney's fee" to prevailing civil rights litigants.  "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  "[T]he district court has discretion in determining the amount of a fee award."  *Id*. at 437.  Additionally, a district court may use its discretion to include expert fees as part of the attorneys' fee award.  42 U.S.C. § 1988(c).

Reasonable attorney's fees are based on the "lodestar" calculation set forth in *Hensley*, 461 U.S. at 433.  The court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate."  *Id*.  "The district court . . . should exclude from this initial fee calculation hours that were 'not reasonably expended.'"  *Id*. at 433–34.  After calculating the lodestar amount, the court can further adjust the lodestar calculation by considering the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th

4

1  Cir. 2016).  Further, time spent establishing entitlement to an amount of attorney's fees awardable under

2  Section 1988 is also compensable.  *In re Nucorp Energy, Inc.,* 764 F.2d 655, 660-62 (9th Cir. 1985).

3  **B.    Hourly Rates**

4        Plaintiff was awarded a $350 hourly rate for Mr. Little's work performed prior to the appeal.

5  This rate determination was affirmed by the appellate court.  In remand proceedings following appeal,

6  Plaintiff seeks $375 per hour for work performed on the appeal and $400 per hour for work performed

7  post-remand before this Court.  Defendants do not oppose these hourly rate increases, and they are

8  within the rates attested to by local counsel for attorneys with Mr. Little's years of experience (*see* Doc.

9  135-3).  These rates are also corroborated by case law finding rates in the Fresno division of the Eastern

10 District to be within the $400/hour range for very experienced counsel.[3]  *See Willis v. City of Fresno*,

11 No. 1:09-cv-01766-BAM, 2014 WL 3563310, at *11 (E.D. Cal. July 17, 2014).

12 **C.    Hours Spent by Plaintiff's Counsel Prior To Appeal**

13       In the Court's experience, expending more than 1,200 hours litigating a § 1983 malicious

14 prosecution case like this one through trial and post-trial proceedings is generally unreasonable.  Here,

15 there were only two claims and three defendants - one of whom settled with Plaintiff prior to trial; there

16 were only two limited discovery disputes, one of which was resolved informally; Plaintiff had to defend

17 a motion to dismiss, a motion to strike, and a motion for summary judgment – none of which were

18 atypical or particularly complex; and the trial was limited to seven days, which included jury

19 deliberation.  The underlying legal issues were not complex, the facts were not overly convoluted or

20 voluminous, the procedural history of the case was straight-forward, and the post-trial proceedings were

21 limited to Defendants' motion for a new trial and Plaintiff's motion for attorneys' fees.  In general, these

22 factors do not suggest 1,200 attorney hours to litigate this case is reasonable.  This is particularly true

23 when similar malicious prosecution cases are litigated in far less time, as noted in the Court's original

---

24 [3] Plaintiff's supplemental fee request for work performed after trial but before the appeal indicates a $375 hourly rate.  (Doc.
   159-1.)  However, Plaintiff's supplemental brief on remand and his reply brief both indicate a rate of $350 per hour for the
25 20.1 hours of work post-trial, pre-appeal.  Given that this is the most updated briefing from Plaintiff, the hourly rate of $350
   – as requested – will be applied to this post-trial, pre-appeal time spent.

order.  *See, e.g., Sulkowska v. City of New York*, 170 F. Supp. 2d 359 (S.D.N.Y. 2001) (false arrest and malicious prosecution case where plaintiff prevailed at trial and awarded 396.49 hours); *Alfonso v. Aufiero*, 66 F. Supp. 2d 183, 189 (D. Mass. 1990) (Awarding attorney's fees for 534.48 hours billed by plaintiff's lead counsel after 12-day jury trial involving § 1983 Fourth Amendment and state malicious prosecution claims against city and eight individual police officers).[4]  On appeal, the Ninth Circuit held this Court did not explain the relevance of these cases in reducing the fees by 60 percent and did not provide the parties an opportunity to comment upon them in reducing the hours of attorney work requested by Plaintiff.

On remand, Plaintiff contends the cases cited by the Court in its original order were dissimilar to this case in that only two involved plaintiffs who prevailed on their malicious prosecution claims, and of those two cases, the proceedings were far less complicated and culminated in non-jury trials. According to Plaintiff, the hours expended by counsel in these cases have no real comparable relevance to this matter.  Plaintiff cites a number of other cases, however, that he asserts are more comparable to this case, and where much larger amounts of attorney time were found reasonable.  (Doc. 211, 4:14-5:17 (citing *Mendez v. County of San Bernardino*, 540 F. 3d 1109 (9th Cir. 2008) (finding plaintiff's counsel's expenditure of 2,144 hours neither in bad faith nor excessive in a case involving false arrest and illegal search claims); *Adams v. City of Rialto*, No. 04-cv-155-VAP (SGLx), 2006 WL 7090890 (C.D. Cal. July 20, 2006) (1,233.8 hours spent by three experienced attorneys in a vigorously litigated excessive force case; other claims asserted were dismissed before trial); *Beecham v. City of West Sacramento,* No. 2:07-cv-1115-JAM-EFB, 2009 WL 3824793 (E.D. Cal. Nov. 16, 2009) (finding 1,198 hours of attorney time and 207.7 hours of law clerk and paralegal time reasonable in contested excessive force/false arrest case, although amount of fees was reduced due to limited success)).)

---

[4] The Court also cited *Elusta v. City of Chicago*, 760 F. Supp. 2d 792 (D. Ill. 2010); *Santiago v. Mercado*, 175 F. Supp. 2d 164 (D.P.R. 2001); *Robinson v. Fetterman*, 387 F. Supp. 2d 432 (E.D. Pa. 2005); *and Connor v. Ulrich*, 153 F. Supp. 2d 199, 204 (E.D.N.Y. 2001).

1    Defendants argue the cases cited in the Court's original order (Doc. 163) provide a meaningful

2    measure to gauge the reasonableness of the requested attorneys' fees.   Specifically, in *Alfonso v.*

3    *Aufiero*, Defendants note the case involved eight police officer defendants along with the city, it

4    required a bifurcated 12-day jury trial, and the jury was required to deliberate for 7 days, as opposed to

5    the 2.5 hours required for the jury to deliberate here.   The plaintiff in *Alfonso* sought reimbursement for

6    1,030 hours of attorney time, but the court awarded only 753.6 hours.   Defendants argue *Alfonso*

7    supports this Court's reduced fee award as that was a much more complex and contested case, and the

8    *Alfonso* court still only awarded the prevailing party roughly 50 percent of the time the plaintiff initially

9    sought.   Defendants also contend the cases cited by Plaintiff to support a higher award of attorneys' fees

10   were far more contentious in that the litigants had more disputes over discovery, more motions were

11   litigated, and/or they required much longer trials.  (Doc. 217, pp. 9-15.)

12   In reply, Plaintiff notes Defendants' counsel here spent over 1,500 hours defending the case,

13   which corroborates the reasonableness of Plaintiff's counsel spending nearly 1,200 hours prosecuting

14   the case.   Despite Defendants' citation to some of Mr. Little's prior cases which they claim are much

15   more complex and for which a similar number of attorney hours were worked, Plaintiff asserts those

16   cases were not more complex than this matter and any additional complexity was offset by other

17   variables, such as limited discovery or fewer motions litigated.  (Doc 218.)

18   As evidenced by the parties' dispute over what factors tend to result in a higher or lower number

19   of hours reasonably spent by counsel across different cases, a comparative analysis does not provide a

20   precise rubric to evaluate Plaintiff's fee request.   No two cases are *exactly* the same.   Even where the

21   same issues are litigated against the same number of defendants in a similar amount of time, there are

22   many variables affecting the hours of attorney work not apparent on the face of a docket including the

23   number of witnesses deposed or interviewed, the amount of travel required for depositions, the time to

24   meet and confer with opposing counsel over disputes that were resolved without court intervention, and

25   the volume of documents or items produced and reviewed.   These and other variables are often

1   accounted for only by billing records that contain adequate descriptions of the tasks undertaken.  As

2   such, rather than a comparative approach to assess reasonableness of the time expended on this

3   litigation, the Court turns to a line-by-line examination of Mr. Little's billing records.

4   **1.      Plaintiff's Counsel's Billing Records**

5   Mr. Little's billing records, while detailed in certain respects, generally lack sufficient

6   descriptions of tasks which complicate consideration of the time spent by counsel.  At first glance, three

7   problems are immediately apparent.  First, every email received or sent by counsel was billed

8   separately and in six-minute increments which resulted in excessive billing for email.  Email billing

9   entries, the vast majority of which were billed at 0.1 hours,[5] account for approximately 1,788 out of the

10  2,453 billing entries accumulated during all proceedings prior to the appeal.  This billing practice

11  resulted in excessive recordation of time which is easily ascertained when considering Mr. Little's

12  billing for receipt of automatic CM/ECF email notices regarding docket activity.  These emails are

13  short and require little time to review, yet Mr. Little billed 83 separate times for receipt of these notices

14  for a total of 8.7 hours.  The Court is very familiar with these automatic notice emails, and review of

15  each takes less than one minute.

16  Second, counsel's billing entries, particularly the more than 1,700 related to email, are not

17  documented or described in a way that show the subject or nature of the task.  Many email

18  communications describe only the recipient with a generic subject making it impossible to tell whether

19  the time spent was reasonable, whether it was duplicative, or whether it was clerical in nature.  While

20  counsel is not required to show how each minute of his time was spent, there has to be enough

21  information for the Court to review.  Here, the vast majority of billing entries for email communication

22  are far too vague.

23

24

25  ---

    [5] There is nothing suspect about billing in 0.1 hour increments, generally.  However, billing for each and every email at 0.1 hours can, in the aggregate, create over-billing that does not reflect the time actually spent.

Third, underscoring the somewhat haphazardness of the time records, Mr. Little billed more than 24 hours of time on November 7 and 8, 2013.  Factors contributing to this obvious over-billing include great numbers of 0.1 hour entries for email on a single day, many of which do not contain sufficient descriptions, and a large block-billed portion of time related to exhibits that appears to encompass a number of discrete tasks.  These three problems are exemplified by Mr. Little's billing on November 8, 2013, which reflects the following entries:

| | |
|---|---|
| Miller – Related case v. Schmitz – Complaint review | 0.4 |
| Fax sent to Ron Calhoun re: Miller | 0.1 |
| Joint Jury Instructions file and review | 0.2 |
| Miller Discovery Depo Statement | 1.5 |
| Plaintiff submission of joint Exhibit list-cvr | 0.1 |
| Plaintiff Exhibit List and compile exhibits and revising and organizing | 8.7 |
| Plaintiff Exhibit List Filed | 0.2 |
| Plaintiff Exhibit List – cvr filed | 0.1 |
| Plaintiff Discovery Depo Statement Filed | 0.1 |
| File trial docs | 0.7 |
| Defendants Index of Trial Exhibits review | 0.5 |
| Defendants Special Verdict Form review | 0.6 |
| Defendants Special Verdict Form – Cover review | 0.1 |
| Defendants Proposed Jury Panel Voir Dire review | 0.4 |
| Def Witness List review | 0.5 |
| Def Trial Brief review | 0.2 |
| Defendant Verdict Form Cover Sheet review | 0.4 |
| Email Correspondence re: Fax sent to Ron Calhoun | 0.1 |
| Email Correspondence with Michael Johnson re: Miller v. Schmitz | 0.1 |
| Email Correspondence with Darrell York re: Miller Trial Confirmed to Start 11/19 | 0.1 |
| Email Correspondence re:  Received Fax | 0.1 |
| Email Correspondence with Carrie Woolley re Miller v. Schmitz | 0.1 |
| Email Correspondence with Darrell York re: Miller Trial Confirmed to Start 11/19 | 0.1 |
| Meeting with Client, Lemoore and travel | 4.2 |
| Email Correspondence with Carrie Woolley re Miller v. Schmitz | 0.1 |
| Email Correspondence with Carrie Woolley re Miller v. Schmitz | 0.1 |
| Email Correspondence with Carrie Woolley re Miller v. Schmitz | 0.1 |
| Email Correspondence with Alex Chechelnik re: Fwd: Complaint | 0.1 |
| Email Correspondence with Carrie Woolley re Miller v. Schmitz | 0.1 |
| Email Correspondence with Darrell York re: Miller Trial Confirmed to Start 11/19 | 0.1 |
| Email Correspondence with Alex Chechelnik re: Fwd: Complaint | 0.1 |
| Email Correspondence with Alex Chechelnik re: Fwd: Complaint | 0.1 |
| Email Correspondence with Alex Chechelnik re: Fwd: Complaint | 0.1 |
| Email Correspondence with Darrell York re: Miller Trial Confirmed | |

| | |
|---|---|
| to Start 11/19 | 0.1 |
| Email Correspondence with Alex Chechelnik re: Fwd: Complaint | 0.1 |
| Email Correspondence with Alex Chechelnik re: Fwd: Complaint | 0.1 |
| Email Correspondence with Carrie Woolley re Miller v. Schmitz | 0.1 |
| Email Correspondence with Carrie Woolley re Miller v. Schmitz | 0.1 |
| Email Correspondence with Daniel Wainwright re: Miller Settlement Conference | 0.1 |
| Email Correspondence with Carrie Woolley re Miller v. Schmitz | 0.1 |
| Email Correspondence with Ryan Marshall re: Final Draft of Joint Instructions | 0.1 |
| Email Correspondence with Carrie Woolley re Miller v. Schmitz | 0.1 |
| Email Correspondence with Daniel Wainwright re: Miller Settlement Conference | 0.1 |
| Email Correspondence with Daniel Wainwright re: Miller Settlement Conference | 0.1 |
| Email Correspondence with Carrie Woolley re Miller v. Schmitz | 0.1 |
| Email Correspondence with Alex Chechelnik re: Fwd: Complaint | 0.1 |
| Email Correspondence with Carrie Woolley re Miller v. Schmitz | 0.1 |
| Email Correspondence with Carrie Woolley re Miller v. Schmitz | 0.1 |
| Email Correspondence re: Notice of E-Filing – Proposed Jury Instructions | 0.1 |
| Email Correspondence re Notice of E-Filing – Pretrial Statement | 0.1 |
| Email Correspondence re Notice of E-Filing – Witness List | 0.1 |
| Email Correspondence re Notice of E-Filing – Trial Brief | 0.1 |
| Email Correspondence re Notice of E-Filing – Proposed Voir Dire | 0.1 |
| Email Correspondence re Notice of E-Filing – Proposed Verdict | 0.1 |
| Email Correspondence re Notice of E-Filing – Pretrial Statement | 0.1 |
| Email Correspondence re Notice of E-Filing – Exhibit List | 0.1 |
| Email Correspondence with Carrie Woolley re Miller v. Schmitz | 0.1 |
| Email Correspondence with Patricia Piggee re: Miller Trial Confirmed to Start 11/19 | 0.1 |
| Email Correspondence with Carrie Woolley re Miller v. Schmitz | 0.1 |
| Email Correspondence with Patricia Piggee re: Miller Trial Confirmed to Start 11/19 | 0.1 |
| Email Correspondence re: Notice of E-Filing – Exhibits List | 0.1 |
| Email Correspondence with ljoorders re:  . . . proposed jury instructions and Verdict Forms . . . . | 0.1 |
| Email Correspondence re Notice of E-Filing – Trial Brief | 0.1 |
| Email Correspondence re Notice of E-Filing – Witness List | 0.1 |
| Email Correspondence re Notice of E-Filing – Proposed Voir Dire | 0.1 |
| Email Correspondence re Notice of E-Filing – Proposed Verdict | 0.1 |
| Email Correspondence re Notice of E-Filing – Exhibit List | 0.1 |
| Email Correspondence with Ryan Marshall re: Miller v. Schmitz; Defendants Special Verdict Form | 0.2 |
| Email Correspondence with Daniel Wainright re: Miller – color 6-pack photo Lineup | 0.1 |
| Review of Depo Summary of R. Silva | 0.7 |
| Review of Depo Alvarez transcripts | 0.5 |

The total hours billed for November 8, 2013, is 25.4.  On November 7, 2013, the day before, Mr. Little billed 25.3 hours.  (Doc. 135-1, pp. 44-45.)

This record keeping appears to be after-the-fact guesswork rather than a careful time-keeping system.[6]  While Plaintiff maintains his counsel did not bill for phone calls or other tasks (Doc. 218, 3:24-4:4), none of these time expenditures and tasks are documented to reflect what time was written-off or deducted.[7]  Failure to document certain time expenditures, while over billing for other time expenditures does not translate into accurate timekeeping or establish a presumption of reliability. With these billing issues in mind, the Court turns to examination of Mr. Little's billing records.

### 2. Billing For All Email Communication

Defendants have identified several categories of Mr. Little's billing they believe are non-compensable due to their clerical nature.  (See Doc. 156-1, Table 6(a)-6(m).)   As such a large portion of Mr. Little's billing entries are related to email, the Court first examines only the email communications within the categories of tasks Defendants claim is clerical and non-compensable.

The Ninth Circuit has recognized that work that is "clerical in nature . . . should [be] subsumed in firm overhead rather than billed" and is therefore not recoverable.  *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir.2009); *see also Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989) (noting that time expended on "purely clerical or secretarial tasks" may not be recovered under § 1988); *Trustees of Constr. Indus. & Laborers Health and Welfare Trust v. Redland*, 460 F.3d 1253, 1257 (9th Cir. 2006) (clerical work is not compensable at attorney or paralegal rates, and may only be billed separately at a lower rate if the custom in the relevant community is to bill separately for such work).  In particular, time spent on tasks like "calendaring deadlines, confirming papers were filed, organizing files, and

---

[6]  Despite Defendants' suggestions, Mr. Little's billing practices do not appear unethical nor do they seem like an attempt to drive up billable hours; rather, the billing deficiencies are consistent with a busy solo practitioner who does not have an organized or reliable system to track billable hours or sufficiently document the nature of the work performed.

[7]  When writing off time potentially billable to a client, sound billing practices would include recording precisely how much time on what tasks was "written off."

1   electronically filing documents" is not properly billable at an attorney or paralegal rate. *In re Mohsen*,

2   473 B.R. 779, 795 (N.D. Cal. 2012).

3   Defendants request elimination of all clerical time spent by Mr. Little including email

4   communications between Mr. Little and Defendants' counsel's secretaries, non-substantive email

5   communications with Defendants' counsel, email communication with court reporters, correspondence

6   regarding depositions, correspondence with document companies, email communication with court

7   staff, inter-office email communication, communications regarding Mr. Little's accounting and

8   invoicing on this case, email communication regarding service of subpoenas, and receipt of electronic

9   CM/ECF court notifications.

10   Plaintiff argues none of this work was purely clerical but required an attorney's involvement.

11   Plaintiff notes the 0.1 hour billing increments have been approved by the California Bar for minor tasks

12   such as email, and this was not an improper method of billing.

13   **a.      Email Communication that is Purely Clerical is Excluded**

14   Defendants compiled a list of 83 time entries Mr. Little recorded for receipt of automatic

15   CM/ECF emails notifying him of docket activity.  (Doc. 156-1, pp. 26-28.)  Nearly all of these emails

16   were billed at 0.1 hours for a total of 8.7 hours.  Receipt and review of these emails is entirely clerical

17   in nature, particularly as Plaintiff's counsel billed separately to review the substantive underlying

18   document, order, or minute order text.   Thus, the 8.7 hours spent reviewing automatic email

19   notifications is excluded as clerical work not compensable at an attorney rate.

20   Defendants also claim that Plaintiff's counsel's time communicating with Court staff and court

21   reporters is purely clerical work that cannot be billed at an attorney rate.  The Court agrees the 9.9

22   hours billed for email communications with Magistrate Judge Boone's Courtroom Deputy (CRD), the

23   undersigned's CRD, and the court reporters is clerical (Doc. 156-1, pp. 17-19, p. 22).  *See Young v.*

24   *Geico Indem. Co*., No. 08–00171 JMS/KSC, 2009 WL 3049640, at *8 (D. Haw. Sept. 23, 2009)

25   (communications with the court are clerical and not compensable at attorney rates).  Likewise, the

email correspondence with document companies (2.1 hours, Doc. 156-1, p. 21 (summary)) is clerical as are the emails related to issuance of subpoenas (1.6 hours, Doc. 156-1, p. 25 (summary)). *See Compass Bank v. Morris Cerullo World Evangelism*, No. 13:CV-0654-BAS (WVG), 2015 WL 3442030, at *8 (S.D. Cal. May 28, 2015) (reducing billing entries due to a finding that "certain tasks were ministerial and did not require an attorney to perform[,]" including drafting a revised subpoena, preparing instructions for service, and phone calls and emails to reschedule deposition).

Email communications regarding depositions also appear clerical (0.9 hours, Doc. 156-1, p. 20). Although Plaintiff's counsel is a solo practitioner and may not have secretarial support for these types of tasks, there is nothing in the record to establish clerical tasks are not generally subsumed within an attorney's hourly rate. Plaintiff argues that not only has the nature of law practice shifted such that attorneys often perform this type of work, but also that these tasks are only partly clerical, not purely so, and are reimbursable at an attorney hourly rate. However, there is no detail regarding these communications to suggest that tasks such as coordinating with document preparation companies, court reporters, or for service of subpoenas were more than ministerial and required an attorney to perform them.

Plaintiff counsel's email communication with Defendants' counsel's secretaries (11.9 hours accumulated as billing entries for email) also all appears clerical (Doc. 156-1, pp. 7-11), and this is supported by Kathy Castillo's declaration and supporting documents establishing these communications were entirely ministerial and did not require an attorney to perform them. (Doc. 155.) The fact that Plaintiff's counsel may have been the only person in his office available for this work does not transmute this communication into substantive work requiring an attorney.

Defendants identify a large number of miscellaneous billing entries they claim are clerical in nature. (Doc. 156-1, p. 29.) As it pertains to email communications in this category, the billing entries are obviously administrative or clerical in nature, or are bereft of detail regarding the sender/recipient of the email and the substantive nature of the communication. Two representative samples include the

1  following: "Email correspondence re: Fax to Court Call," and "Email re: Scheduling Order."  (Doc.

2  156-1, p. 29.)  These email communications are purely clerical and should not be billed at an attorney

3  hourly rate.  These miscellaneous email communications constitute 9.61 hours of billing, and will be

4  excluded.

5       Defendants also assert a number of Mr. Little's email communication with Defendants' counsel

6  was only clerical and not compensable.  (*See* Doc. 156-1, pp. 12-15.)  Upon review of the billing

7  entries, however, is not clear to the Court that this is purely clerical or ministerial communication, and

8  it will not be excluded as such.  For calendaring or administrative tasks, it appears Mr. Little was in

9  regular contact with Defendants' secretaries.  This tends to suggest email with Defendants' counsel was

10  at least partly substantive.

11       Defendants also assert inter-office email communications between Mr. Little and his staff are

12  purely clerical.  (*See* Doc. 156-1, p. 23.)  It is not apparent from the descriptions of the email

13  correspondence that this work is entirely clerical: some of the communications relate to deposition

14  summaries, which is not necessarily ministerial.  Mr. Little's time in this category will not be excluded

15  as clerical.

16       Defendants identify 20 post-trial email communications between Mr. Little and Darrell York,

17  Plaintiff's police practices expert, which Defendants assert is excessive and lacks any meaningful

18  description.  (Doc. 156-1, p. 5.)  The nature of the email communication is not described, but merely

19  shows multiple emails with Darrell York regarding the Miller case.  The time is not clerical, but as with

20  most of Mr. Little's email billing entries, it is poorly described and billed in a manner that is excessive.

21  While this time will not be eliminated as clerical in nature, it will be addressed below as part of the

22  inflationary billing with regard to email communication.

23         **b.**    **Email Communication with the Media**

24       Defendants claim Plaintiff is not entitled to fees for the time Mr. Little spent communicating

25  with the media about the case, and they cite several cases where courts have declined to award

attorneys' fees for contacts with the press as the type of activity an attorney does at his or her own expense.  *See, e.g., Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995) (finding district court abused discretion in awarding time for media contact).

Plaintiff argues a court has discretion to award time spent on publicity that is directly and intimately related to the success of the representation, and he maintains his counsel did not contact the media or the press until he was specifically asked to do so by Plaintiff.  Plaintiff contends a specific item of his general damages was the shame he felt at being arrested; a necessary part of "clearing" his name was announcing that the officer who had caused him to be charged criminally did so in violation of his constitutional rights.  According to Plaintiff, the limited press contact his counsel had at Plaintiff's request after the verdict was a key aspect of restoring Plaintiff's good name, given the reach of media announcements.  Plaintiff argues publicizing the verdict fostered his litigation goal and has been considered compensable by other courts.  *United States v. San Francisco*, 748 F. Supp. 1416, 1423 (N.D. Cal. 1990) (publicity efforts narrowly focused on fostering litigation goal of client is compensable)).

While the Court agrees that the media contact post-verdict was substantively related to the merits of the case for the reason Plaintiff articulates, and therefore is awardable in this factual setting, the email correspondence of January 30, 2012, is pre-verdict and would not have been made with the goal of restoring Plaintiff's reputation.  Of the 2.6 hours identified in Plaintiff's counsel's billing records as email correspondence with the media (*see* Doc. 156-1, p. 4), only 0.1 hour is non-compensable.

### c.     Email Communication for Accounting, Invoicing, and Billing

Accounting, budget, or billing communications are not tasks properly billed to the client.  While this may be work requiring an attorney to complete and is not clerical, it is not traditionally time that is paid for by the client, but is overhead work that is subsumed within the attorney's hourly rate.  Here, email correspondence related to accounting or billing amounted to 2.5 hours of time (Doc. 156-1, p. 24), and this will be excluded as part of overhead subsumed within the hourly rate.  *See Shorter v.*

*Valley Bank & Trust Co*., 678 F. Supp. 714, 725 (N.D. Ill. 1988) ("most lawyers do not bill their fee-paying clients for hours spent preparing bills"); *Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." (internal citation and quotation marks omitted)).

### d.    Email Communication Lacking Any Description

Defendants identify a large block of Mr. Little's time spent on email communications that lacks any description whatsoever.  Specifically, over 40 emails were billed as "Email correspondence re: Miller Case."  (Doc. 156-1, p. 35.)  This type of billing entry does not meet counsel's burden to show how time was spent, and there is so little detail the Court cannot determine whether it was reasonable. *Jordan v. Multnomah Cnty*., 815 F.2d 1258, 1263 n. 8 (9th Cir. 1987) ("It is not sufficient for prevailing counsel to opine that all of the time claimed was usefully spent, and the district court should not uncritically accept counsel's representations concerning time expended.").  Therefore, 5.1 hours of time spent in unspecified email communication is excluded for inadequate detail.  *Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").

### e.    Email Communications Unrelated to the Case

Defendants argue that 5 email communications in February 2012 regarding Plaintiff's attempt to purchase a firearm are unrelated to the case and non-compensable.  (Docs. 153, 28:9-16; 156-1, p. 33.) Plaintiff argues his possible exclusion from gun ownership as a result of his false arrest and malicious prosecution by Defendants was an element of the possible damages that needed to be assessed.  (Doc. 159, 24:17-21.)  For this reason, the communication appears relevant to a substantive issue in the case and thus is not excludable as "unrelated."

### f.      Summary of Non-Compensable Email Time

The following email correspondence was excluded as non-compensable either because it was purely clerical and should have been subsumed by the hourly billing rate, or it was so inadequately detailed, the nature of the task and the reasonableness of the time it took to perform is unknown:

| | |
|---|---|
| Email from CM/ECF E-Filing System | 8.7  hours |
| Communications with Eastern District Staff | 1.9  hours |
| Email Communication with court reporters | 8.0  hours |
| Email Correspondence with document companies | 2.1  hours |
| Email Communications regarding subpoenas | 1.6  hours |
| Email Communication regarding depositions | 0.9  hours |
| Email Communication with Defendants' Counsel's Secretaries | 11.9  hours |
| Miscellaneous Email Communication | 9.61  hours |
| Email to Media | 0.1  hours |
| Email re Accounting and Invoicing | 2.5  hours |
| Email Lacking Description | 5.1  hours |
| **Total** | **52.41 hours** |

### g.      Reduction of Remaining Email Billing as Excessive

Having excluded time spent on email communication that is non-compensable or excluded because it was not documented sufficiently, the Court turns to consider the large volume of remaining time spent on email that has occurred as a result of the practice for billing 0.1 hour for each email sent or received.  Due to the generally vague descriptions of almost all email communications, the Court is unable to determine whether each email communication actually required 6 minutes of time.  Given the manner in which Mr. Little recorded time related to automatic e-filing notices, email with Court staff, and email with Defendants' counsel's secretaries, it is clear most of these 0.1 email billing entries did not require 6 minutes of time.  The e-filing email notices are an appropriate bellwether for considering the reasonableness time spent on email communication in general.  Not only is the Court in a position to evaluate accurately the time needed to review these email notices, all other email was recorded in the same manner as the automatic e-filing notice emails – the time spent on multiple emails per day was not considered as a whole to accurately reflect the actual time expended.

1        The e-filing notices require at most one minute to receive and to read – and that is a generous

2   estimate.   There were 83 automatic email notices generated that the Court can identify as billed by

3   Plaintiff's counsel, which accounted for 8.7 hours of time.   These 83 emails should only have taken 1

4   minute to open and read, thus the collective time spent would only have been 1.4 hours, not 8.7.   Only

5   16 percent of the total billed reflects the actual time spent on these emails.   The Court therefore applies

6   that percentage to the remainder of the email correspondence billed that has not already been deducted

7   as non-compensable at an attorney rate.   For all work performed before the District Court prior to

8   appeal, Plaintiff billed 207.8 hours for email. After subtracting 52.41 hours excluded above, 16 percent

9   of the remaining 155.39 hours spent on email will be awarded, which is 24.86 hours (*i.e.*, a 130.53 hour

10  reduction).

11       While this is a significant reduction of counsel's time spent on email correspondence, the billing

12  records support such a reduction.   First, it is proportional to the excess billing for receipt of e-filing

13  notices.   Second, the billing for email was without any apparent consideration for the actual time spent

14  on the communications as a whole.   For example, on January 25, 2013, counsel emailed or received

15  email from Julie Miller 13 times, but there is almost no description of the nature of that email

16  correspondence and it is hard to imagine, particularly in view of how time spent reviewing e-filing

17  notices was billed, that 13 emails took an aggregate 1.3 hours to review or send.   Had these

18  communications taken such a large amount of time, the Court would expect a description to corroborate

19  the substantive nature of the email.   *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000)

20  (holding that a district court may reduce hours to offset "poorly documented" billing); *In re Wash. Pub.*

21  *Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) (party petitioning for attorney's fees

22  bears the burden of submitting detailed time records justifying hours claimed to have been expended).

23  This lack of description coupled with the practice of billing for each email sent or received has resulted

24  in excessive hours claimed for time spent reviewing or sending email.   It is also clear this billing

25  practice contributed to Mr. Little twice billing more than 24 hours in a single one-day period.

In sum, a 52.41-hour reduction is made for email communications that were clerical, poorly documented, or not compensable; additionally, a 130.53-hour reduction for time spent on all other email communication is warranted due to overuse of 0.1 hour entries for email that was also poorly documented.   This is a reduction of 182.94 hours of the total 207.8 hours billed for email communication prior to the appeal.

### 3.      Non-Email Billing Entries

#### a.      Clerical Tasks Not Awardable

As with email communication regarding clerical tasks, Defendants identified several categories of billing for other types of tasks they argue are clerical.   Defendants identified tasks concerning depositions that appear clerical such as "Miller Depo Ex Scan 0001," "Miller Witness Depo Fee ck 2/28/13," "filed p.o.s. for depositions," "Calhoun Fax re Pre Depo," "Callanan Depo Expense," and "Provini Depo – hotel bill review."  (Doc. 156-1, p. 20.)  The time billed for non-email-related tasks in this category was 1.1 hours, and it will be excluded as clerical work that should have been subsumed in counsel's hourly rate.

Defendants also claim 10.7 hours of Mr. Little's time was spent on miscellaneous clerical activities such as faxing, calendaring dates, and filing documents.  (Doc. 156-1, pp. 29-32.)  Clerical work such as copying and scanning, mailing, and organizing and tabbing exhibits should not be billed to clients; rather, these tasks should be covered or subsumed by an attorney's hourly rate, just as are the costs of overhead.  *Leuzinger v. County of Lake*, C 06–0398 SBA, 2009 WL 839056, at *4 (N.D. Cal. March 30, 2009).

Several entries Defendants list in this category do not appear entirely clerical, such as reviewing the pre-trial order (0.9 hours), reviewing a settlement conference statement on April 9, 2013 (0.5 hours), and reviewing the scheduling order (0.5 hours).  The rest of the time identified by Defendants in this category involve clerical tasks or the description of the work appears purely clerical.  Therefore, 8.8 hours of Mr. Little's time spent on non-email miscellaneous clerical activities will be excluded.

### b.    Accounting, Invoicing, and Budgeting

As discussed above, time spent maintaining time records, budgeting, or accounting are not properly billed to one's client, and cannot, therefore, be properly billed to an adversary pursuant to statutory authority.  *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980).  Here, beyond email correspondence in this category (which has already been excluded), Defendants claim Mr. Little spent 4.7 hours on accounting and case budgeting.  (Doc. 156-1, p. 24.)  The Court agrees this is not reimbursable at an attorney rate.  Even the preparation of a trial budget in September 2013 does not appear related to a settlement demand or a substantive damages issue; this time is excluded.

### c.    Vaguely Documented Discovery Tasks

"The party requesting fees for [attorney] work must submit evidence documenting the hours claimed, and if the documentation is inadequate, or the claimed hours appear 'excessive, redundant, or otherwise unnecessary,' the court should reduce the award accordingly."  *Webb v. Bd. of Educ. of Dyer Cnty., Tenn*., 471 U.S. 234, 253 n. 16 (1985) (Brennan, J., concurring in part and dissenting in part) (citation omitted).  An attorney "'is not required to record in great detail how each minute of his time was expended,'" *Fischer*, 214 F.3d at 1121 (quoting *Hensley*, 461 U.S. at 437 n. 12), but the attorney should identify "the general subject matter of his [or her] time expenditures," *id*. (quoting *Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1542 (9th Cir. 1992), *vacated on other grounds*, 984 F.2d 345 (9th Cir. 1993)) (internal quotation mark omitted).

As repeatedly noted, a lack of meaningful descriptions of various tasks performed creates a problem in reviewing the reasonableness of Mr. Little's time entries.  On June 29, 2012, counsel billed time for compiling and organizing various initial disclosure documents as well as drafting Plaintiff's initial disclosures.  These tasks are important and should take time to carefully complete, but there is no description indicating an approximate number of documents or materials reviewed.  Without a general description of the volume or nature of the initial disclosures, it is impossible for the Court to assess the reasonableness of the time spent on this activity.  The same lack of description makes other discovery

tasks impossible to assess for reasonableness or determine how much time was spent on discrete tasks

billed together:

| 6/29/12 | Compiling and Organizing various ID documents | 3.7 |
|---------|------------------------------------------------|-----|
| 6/29/12 | Plaintiff Initial Disclosures draft, revise & finalize | 6.3 |
| 9/3/12 | Drafting, revising & finalizing discovery responses and documents produced | 7.2 |
| 9/9/12 | Miller Discovery Requests drafts | 2.8 |
| 11/1/12 | Review defense discovery responses I-940 | 3.1 |
| 12/5/12 | Silva Discovery Responses | 1.2 |
| 12/5/12 | Silva Discovery Docs produced Hanford PD | 0.9 |
| 12/5/12 | Silva Docs Discovery | 1.8 |
| 12/15/12 | Miller's Request for Production of Docs, Set No. two draft, issue | 2.7 |
| 12/15/12 | Plaintiff Req. for Production of Docs, set two | 1.3 |
| 12/21/12 | Add'l Suppl discovery – Ivan Hurd redaction, review and serve | 1.8 |
| 12/31/12 | Plaintiff Request for Production of Docs Set No. Two draft and issue | 1.4 |
| 1/28/13 | Suppl discovery compile and serve | 1.4 |
| 2/7/13 | Miller Docs produced – Kings County 2-7-13 review | 2.1 |
| 4/12/13 | Miller Discovery Responses Suppl | 1.3 |
| 4/12/13 | Plaintiff Response to Special Interrogatories Set (2) – Ex B draft and revise | 1.6 |
| | **Total** | 40.6 |

These time entries are not discrete tasks, but implicate several tasks. As it pertains to reviewing "defense discovery response I-940" on November 1, there is no indication what type or how much discovery was reviewed, and the amount of time billed suggests more than simple review. In the exercise of discretion, a 10 percent reduction (4.06 hours) is made with regard to the vaguely documented time spent on multiple discovery tasks. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (finding that a "district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation" (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)) (internal quotation mark omitted)).

**d.      Block Billing Resulting in Excessive Billing**

**(i)      Block Billing for Trial Preparation**

As noted above, Mr. Little's billing records are flawed in that at least two days record more than 24 hours of work, and from November 7 through November 27, 2013, an extraordinary amount of hours were billed.  While this time period was just prior to and includes the trial – an extremely busy time for a trial lawyer – Mr. Little billed 246.5 hours between November 13 and November 27, which amounts to an average of 19 hours billed per day.  This appears attributable both to the excessive email billing practice and to large block-billed periods of time for unspecified "trial prep."  Although following remand Mr. Little reduced some of his "trial prep" time between November 18, 2013, and November 27, 2013 by 50% for a 45.5-hour reduction, there are still large block-billed segments of time that necessarily involve several tasks but where no meaningful task description is provided.

"Block billing" is "'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007).  Block billing also involves billing a large block of time for two or more tasks without delineating how time was spent on any specific, individual tasks.

Because the "fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked," the Court may reduce hours that have been block-billed "because block billing makes it more difficult to determine how much time was spent on particular activities." *Id.* at 948.  To impose a reduction, however, the Court must "'explain how or why . . . the reduction . . . fairly balance[s] those hours that were actually billed in block format." *Id.*  A reduction for block-billed hours may not be appropriate if "individual tasks are specified" and the entries are "detailed enough for the Court to assess the reasonableness of the hours billed." *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010).

The Court has no doubt Mr. Little spent many hours preparing for trial. However, the descriptions of the work performed during this time are so minimal, accurate evaluation is hampered. For example, on November 13, 2013, counsel spent 4.7 hours on "exhibit binders—organize and prep for trial," and then spent 7.8 hours on "trial prep" on the same day. This appears somewhat duplicative, but it is also difficult to determine what time was actually spent on which tasks and whether the time outlay was reasonable. Also on November 13, counsel billed a total of 23.9 hours, which the Court finds implausible. As counsel reduced his "trial prep" between November 18, 2013, and November 27, 2013, by 50 percent, the Court likewise reduces the 7.8 hours spent on "trial prep" and the 4.7 hours spent on organizing exhibit binders to prepare for trial expended on November 13, 2013. When a 50% reduction (6.25 hours deducted) is applied to these two block-billed entries, the daily total billing of 23.9 hours is reduced to a more reasonable 17.65 hours.

Similarly, "trial prep" time entries on November 14 through 17 will be reduced by 30 percent for lack of a description of the discrete tasks involved. *See Welch*, 480 F.3d at 948. In sum, from these 5 days between November 13 through November 17, a total of 20.2 hours[8] is eliminated for block billing "trial prep" time to reduce the time recorded to a reasonable amount.

### (ii)  Block Billing For Opposing Summary Judgement Motion

Defendants claim Plaintiff's counsel spent an excessive amount of time drafting an opposition brief to Defendants' Motion for Summary Judgment. Counsel spent 66.9 hours researching and drafting the brief in opposition of Motion for Summary Judgment. Defendants argue this was excessive for an attorney with more than 20 years of experience in a relatively straight-forward case. Defendants assert that 40 hours of time would be reasonable for an attorney with Mr. Little's background and experience, and the Court should reduce the fee request by 26.9 hours.

---

[8] 11/13/13 = 6.25 hour reduction; 11/14/13 = 3.69 hour reduction; 11/15/13 = 2.31 hour reduction; 11/16/13 = 4.05 hour reduction; 11/17/13 = 3.9 hour reduction.

Plaintiff argues the motion for summary judgment itself was 212 pages in length, including exhibits; Plaintiff's opposition consisted of 243 pages, including exhibits; and another 1,626 pages of deposition transcripts were lodged.  Plaintiff notes that, in opposition to the motion, Plaintiff had the burden of establishing material factual disputes wherever they existed, and thus was required to comb the record to present these factual disputes.

Having considered the issues addressed, the number of disputed facts, and the evidence involved, it is difficult to conclude that the opposition brief would require nearly 70 hours, and review of the billing record does little to illuminate how time was spent on the various tasks involved in drafting the opposition.  The billing for this time is recorded in blocks:

| Description | Time |
| --- | --- |
| Notes re:  SJM opposition draft and revise | 1.7 |
| SJM Opposition research | 5.3 |
| SJM Opposition draft | 9.7 |
| SJM Opposition draft and research | 11.4 |
| SJM Opposition draft and research | 10.3 |
| SJM Opposition draft and research | 13.5 |
| SJM Opposition finalize and file | 15 |

There were many discrete tasks involved in drafting this motion, such as reviewing deposition transcripts and evidence for disputed factual issues, drafting the statement of disputed facts, and coordinating the exhibits with the statement of disputed facts, but none of the time on these tasks was delineated separately.  As such, this is a form of block billing containing minimal description of the tasks involved, and does not show why this opposition brief took the time it did in light of the issues briefed and the number of disputed facts.  The Ninth Circuit has recognized that block billing may increase time spent by as much as 30 percent.  *See Welch*, 480 F.3d at 948 (accepting California State Bar's Committee on Mandatory Fee Arbitration report that block-billing "may increase time by 10% to 30%," and affirming reduction within that range).  As such, the Court finds it is appropriate to reduce the number of hours spent by 10 percent (6.69 hours) and award 60.21 hours.  This resulting amount of time is reasonable considering the issues addressed in the opposition brief and the supporting materials.

### (iii)   Block Billing Work on Motions in Limine

The same type of block-billing with minimal or vague task descriptions is true of Mr. Little's billing with regard to time spent on motions in limine, making this time difficult to assess:

| | | |
|---|---|---|
| 9/27/13 | List of Motions in Limine notes draft | 3.6 |
| 9/29/13 | MIL research | 4.9 |
| 10/5/13 | MIL draft and revise | 6.5 |
| 10/6/13 | MIL draft and revise | 8.0 |
| 10/7/13 | MIL draft and research and revisions | 10 |
| 10/8/13[9] | MIL draft and finalize and file | 13 |
| 10/9/13 | MIL opposition draft and research and revise | 10 |
| 10/12/13 | Opp. To Def. MIL further research and drafting | 9.5 |
| 10/13/13 | Opp. To Def. MIL drafting and revise | 11.5 |
| 10/14/13 | Opp. To Def. MIL finalize and file | 10.3 |

Plaintiff filed 14 motions in limine, one with several discrete subparts.  However, when considering the motions filed and the evidentiary issues addressed, the block billing gives no indication how much time was spent on any particular portion or motion, or how much time was spent researching particular issues.  Given this lack of detail, it is difficult to determine whether 46 hours spent researching and writing these 14 motions was reasonable.

Similarly, the time spent on the opposition to Defendants' eight motions in limine is also block billed with vague task descriptions.  In total, Plaintiff spent 87.3 hours on drafting motions in limine and an opposition brief.  Again, given that block billing may increase time by up to 30 percent, this time will be reduced by 20 percent to account for what appears to be somewhat excessive time.  *Welch*, 480 F.3d at 948.  Therefore, 17.46 hours are reduced for block billing.

### e.   Duplicative Billing

Another factor eroding the Court's confidence in counsel's billing records is the repeated duplicative entries.  The following 0.1 hour billing entries were generated in response to extremely short minute orders from the Court (on each day, only one short minute order was issued):

| | |
|---|---|
| 1/4/13 | Review minute order issued |

---

[9] Although the billing records indicate Plaintiff's motions in limine were filed on October 8, 2013, they were actually filed on October 9.

1/4/13          Magistrate Order of Reassignment
1/4/13          Email Correspondence re: Notice of E-Filing – Order
(Doc. 135-1, p. 17.)

4/29/13         Email Correspondence re: Notice of E-Filing – Miller v. Schmitz et al Minute Order
4/29/13         Review minute order
4/29/13         Review minute order
(Doc. 135-1, p. 33.)

5/1/13          Email Correspondence re: Notice of E-Filing – Miller v. Schmitz et al In chambers
                Conference Minutes
5/1/13          Review minute order
5/1/13          Review minute order
(Doc. 135-1, p. 33.)

6/5/13          Review minute order
6/5/13          Email Correspondence re: Notice of E-Filing – Minute Order
6/5/13          Review minute order
(Doc. 135-1, p. 35.)

722/13          Email Correspondence re: Notice of E-Filing – Minute Order
7/22/13         Review minute order
7/22/13         Review minute order
(Doc. 135-1, p. 36.)

Thus, 0.5 hours recorded for reviewing the same minute order twice on these five days are eliminated as duplicative.

### f.    Billing for Travel Time

Defendants contend Plaintiff's time traveling to depositions should be reduced by 50 percent. Courts have sometimes reduced hours billed by attorneys for time spent traveling,[10] but in the Eastern District, courts have generally compensated attorneys at their full hourly rate for traveling time.  *See, e.g., Jones v. Cnty. of Sacramento*, No. CIV S–09–1025 DAD, 2011 WL 3584332, at *15 (E.D. Cal. Aug.12, 2011) (awarding three hours of travel time from Sacramento to San Jose and back to conduct deposition at full rate); *Jones v. McGill*, No. 1:08–CV–00396–LJO–DLB, 2009 WL 1862457, at *3 (E.D. Cal. June 29, 2009) (awarding fifteen hours of travel time for meetings with experts and

---

[10] *See In re Washington Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1299 (9th Cir.1994) (affirming reduction in travel time award by fifty percent due to the inevitable "distractions associated with travel" that likely reduced attorneys' effectiveness); *Alnutt v. Cleary*, 27 F. Supp. 2d 395, 400 (W.D.N.Y.1998) (reducing travel time by fifty percent); *Hiram C. v. Manteca Unified Sch. Dist*., No. S–03–2568 WBS KJM, 2004 WL 4999156, at *2 (E.D. Cal. Nov.5, 2004) (award for travel time at less than fifty percent of ordinary hourly rate).

witnesses at full rate); *Davis v. Sundance Apartments*, No. CIV. S–07–1922 FCD GGH, 2008 WL 3166479, at *5 (E.D. Cal. Aug.5, 2008) (awarding six hours of travel time at full rate).  Thus, because the amount of time spent Mr. Little spent traveling is reasonable, and the depositions to which he traveled were necessary to the case, the Court will award compensation of travel time at Mr. Little's full hourly rate.  No reduction in the traveling time is warranted.

### g.    Time Unrelated to the Case

Defendants note Mr. Little billed 0.2 hours for time spent conducting an Aladdin Bail Bonds Document/Receipt review on June 29, 2012, which they claim is unrelated to this litigation.  (Doc. 156-1, p. 33.)  Plaintiff does not explain how this time is relevant to the litigation nor is its relevance obvious in the task description.[11]  This 0.2 hours will be excluded as unrelated to the litigation.

### 4.    Supplemental Fee Request

Defendants contend Plaintiff's counsel's 20.1 hours spent drafting Plaintiff's opposition to Defendants' motion for a new trial is excessive and unreasonable.  Defendants argue Mr. Little is an experienced practitioner and the case was not complex; thus, an opposition should have only taken 10 hours.  (Doc. 217, 28:11-22.)   Counsel's supplemental billing suffers the same weakness regarding block billing as the hours billed in opposing Defendants' motion for summary judgment.  The billing descriptions are extremely minimal and are unhelpful in assessing whether the time spent was reasonable.  Good finished product, which is descriptive of Plaintiff's counsel's work, often belies the time spent creating it.  When the sheer amount of hours spent is greater than expected, descriptive billing records aid in spotting where extra time was required.  This does not mean the billing records need to detail every second of time, but large block-billed entries with descriptions such as "draft" or "research" a motion are unhelpful.  The 20.1 hours spent is only slightly greater than expected when considering the issues briefed, and thus only 10 percent will be reduced to account for block billing that

---

[11] Email correspondence in this category was discussed *supra;* time spent on those email tasks was reduced but not excluded.

1  tends to inflate the amount of hours expended.  *See Welch*, 480 F.3d at 948.  Thus, 2.01 hours will be

2  reduced from time spent opposing Defendants' motion for a new trial.

3  **D.      Time Spent on Appeal Proceedings**

4  **1.      Email Communications**

5  The hours recorded after the appeal was initiated appear to bill for each and every email sent or

6  received.  This practice, as noted above, has resulted in an over-billing for time spent on email in this

7  case.  Considering the billing for e-filing notices where only 16 percent of the time recorded reflected

8  actual time spent, the email billing in short 0.1 hour increments will be reduced by 84 percent.

9  There were 64 billing entries recording 0.1 hours for time spent corresponding by email for a

10  total of 6.4 hours.  (Doc. 211, pp. 89-94.)  This will be reduced by 5.3 hours.

11  **2.      Appellate Mediation Brief**

12  Defendants argue the 6 hours Mr. Little spent on the appellate mediation brief was excessive.

13  As the tasks involved are block-billed with no description of how many issues were covered, what

14  amount of time was spent on research, or the length of the brief, this block-billed entry will be reduced

15  by 20 percent to account for the increase in the amount of time due to block billing.  *See Welch*, 480

16  F.3d at 948.  Thus, this billing entry will be reduced by 1.2 hours.

17  **3      Appellate Briefing**

18  Large blocks of time were billed for the tasks involved in the appellate briefing.  The Court has

19  reviewed the appellate briefs submitted.   Many of these issues were researched and briefed in

20  conjunction with Plaintiff's motion for reconsideration of the original order regarding Plaintiff's motion

21  for attorneys' fees.

22  | | | |
|---|---|---|
| 8/1/14 | Review of trial documents for excerpts of record | 5.0 |
| 8/10/13 | Research for Appellant's Opening Brief | 4.0 |
| 8/12/14 | Draft Appellant's Opening Brief | 6.0 |
| 8/29/14 | Research and continued drafting Appellant's Opening Brief | 5.0 |
| 9/10/14 | Continued drafting of Appellant's Opening Brief | 6.0 |
| 9/21/14 | Finalize Appellant's Opening Brief | 4.2 |
| 9/22/14 | Appellant Opening Brief finalized and submitted | 1.2 |

28

| | | |
|---|---|---|
| | **Total** | **31.4 hours** |
| 12/24/14 | Research for Appellant's Reply Brief | 5.0 |
| 12/25/14 | Draft Appellant's Reply Brief | 9.2 |
| 12/26/14 | Edit, finalize and submit Appellant's Reply Brief | 5.2 |
| | **Total** | **19.4 hours** |

The total hours spent on these briefs was 50.8 hours. This is not necessarily unreasonable but appears excessive when considering the lack of description for the tasks involved, the final briefs submitted, and the overlap in research from the briefs presented during the post-trial proceedings. As repeatedly noted, counsel's billing practice makes it exceedingly difficult to assess the reasonableness of the time spent, even when the final brief can be reviewed and the substantive issues considered. There is no delineation between what time was spent researching as opposed to drafting or what issues were more time consuming to research. The Court therefore reduces these block-billed hours by 10 percent; 5.08 hours will be reduced. *See Welch*, 480 F.3d at 948.

**4.      Corrected Reply Brief**

Defendants assert Plaintiff's counsel's time spent correcting a mistake in the appellate reply brief should be eliminated. Counsel spent 1.6 hours drafting and submitting a corrected reply brief. This time will be eliminated. *McCauley v. Colvin*, No. 2:15-cv-0122-JCR, 2015 WL 6031429, at * 4 (W.D. Wash. Oct. 15, 2015) (finding unreasonable hours billed correcting mistakes in briefing).

**5.      Summary of Time Reductions for Appellate Proceedings**

Of the 118.2 hours spent on the appeal, the Court finds reasonable 105.02 hours after the following 13.18-hour reduction:

| | |
|---|---|
| Email Correspondence | 5.3 hours |
| Mediation Brief | 1.2 hours |
| Appellate Briefing | 5.08 hours |
| Corrected Reply Brief | 1.6 hours |
| **Total** | **13.18 hours** |

**E.     Time Spent on Post-Appeal Remand Proceedings**

Plaintiff submitted no billing sheet for the 8.0 hours requested for time spent on the remand activities.    Defendants do not oppose this time expenditure.    Given the minimal number of hours requested for the two briefs Plaintiff filed regarding attorneys' fees in addition to the time spent litigating discovery of Defendants' billing records before the Magistrate Judge, the Court will award this time despite a lack of billing records showing the time spent on the various tasks engaged in proceedings following remand.

**F.     Summary of All Reductions**

For all the reasons stated above, Mr. Little's hours spent on the litigation will be reduced in the following aspects:

| **Work Prior to Appeal** | |
|---|---|
| **Billing Category** | Time Reduced |
| Email | 182.94 Hours |
| Non-Email | |
| *Related to Depos* | 1.1 hours |
| *Misc. Clerical* | 8.8 hours |
| *Accounting, Invoice* | 4.7 hours |
| *Vague Billing* | 4.06 hours |
| *Block Billing* | 44.35 hours[12] |
| *Duplicative Billing* | 0.5 |
| *Unrelated to Case* | 0.2 |
| Supplemental Fees | |
| *Block Billing* | 2.01 hours |
| **Total Reduction** | **248.66** |
| **Total Billed** | **1,154.31**[13] |
| **Already Paid** | **459.88** |
| **Sub-Total Award** | **445.77 hours at $350/hr = $156,019.50** |
| | |
| **Appellate Work** | |
| **Billing Category** | Time Reduced |
| *Email (excessive)* | 5.3 |

---

[12] Block-billing reductions include 20.2 hours ("trial prep"); 6.69 hours (MSJ); 17.46 hours (MILs).

[13] 1,149.71 hours (Doc. 135-1, pp. 1-58) + 50.1 hours (Doc. 159-1) = 1,199.81 − 45.5 hours (Doc. 211, pp. 84-87) = 1,154.31 hours.

| | |
|---|---|
| *Mediation Brief* | 1.2 hours |
| *Appellate Briefs* | 5.08 Hours |
| *Corrected Reply Brief* | 1.6 Hours |
| Total Reductions | 13.18 hours |
| Total Billed | 118.2 hours |
| **Sub-Total Award** | **105.02 hours at $375/hr<br>$39,382.50** |
| **Remand Work** | **No Reductions** |
| Total Billed | 8.0 hours at $400/hr |
| **Sub-Total Award** | **$3,200** |
| **Total Award** | **$198,602** |

## IV.   CONCLUSION AND ORDER

For the reasons set forth above, Mr. Little's hours have been reduced by 261.84 hours as excessive, duplicative, poorly documented, or not compensable at an attorney hourly rate.  Plaintiff has already been compensated for 459.88 hours of the 1,280.51 billed.  After subtracting the award already paid (459.88 hours at $350/hr), the total award is $198,602.

Accordingly, IT IS HEREBY ORDERED that Plaintiff is awarded $198,602 in attorneys' fees, which is in addition to the amount already paid pursuant to the Court's original order on February 18, 2014 (Doc. 163).

IT IS SO ORDERED.

Dated:   __**February 15, 2017**__          _____**/s/ Lawrence J. O'Neill**_____
                                             UNITED STATES CHIEF DISTRICT JUDGE